UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ELLIOT SCOTT GRIZZLE,

Plaintiff,

v.

COUNTY OF SAN DIEGO et al.,

Defendants.

Case No.:  3:17-cv-0813-JLS-PCL

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE RE:**

**DEFENDANTS' MOTION TO DISMISS COMPLAINT**

## I. INTRODUCTION

Elliot Scott Grizzle ("Plaintiff") is currently a state prisoner proceeding *in forma pauperis*, who has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 alleging violations of his Eighth and Fourteenth Amendment rights during his incarceration as a pretrial detainee at San Diego County Jail. (Doc. 1.) Presently before the Court is select Defendants' motion to dismiss Plaintiff's complaint for failure to state a claim. (Doc. 55.)

The Honorable Janis L. Sammartino has referred the matter to the undersigned Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 72.1(c)(1)(d). After a thorough review of the pleadings and supporting documents, this Court recommends the motion to dismiss be **GRANTED**.

//

1

# II. BACKGROUND[1]

At the time of filing his complaint, Plaintiff was a pretrial detainee at the San Diego County Jail ("SDCJ"). (Doc. 1 at 10.) Upon his arrival at SDCJ on August 3, 2016, Plaintiff was immediately and inexplicably placed into administrative segregation.[2] (Doc. 1 at 11.) While being escorted to administrative segregation, Plaintiff asked the escorting officers why he was being placed into administrative segregation when during his previous incarceration, he had been housed in the general population. (Id.) The escorting officers did not know, and directed Plaintiff to file such an inquiry through an inmate request directed to "classification." (Id.) On August 4, 2016, Plaintiff filed the inmate request as directed, giving the request to an SDCJ staff member during a mail pickup, but Plaintiff's request was never answered by "classification." (Id.)

Plaintiff claims he has suffered multiple harms as a result of his placement in administrative segregation. Plaintiff argues that due to the San Diego County Jail's daily schedule in the administrative segregation unit, Plaintiff has suffered from severe sleep deprivation, which has led to a slew of other physical and psychological issues. (Id. at 13.) In administrative segregation, televisions are turned on at 7 a.m. and set to a high volume. (Id. at 12.) Televisions remain on until 9:45 p.m. during the week and 10:45 p.m. on the weekends. (Id. at 11) After the televisions are turned off for the night, however, the lights still remain on a bright setting. (Id.) At 11:00 p.m., a count is done, requiring Plaintiff to get out of bed and to the cell door to show the SDCJ floor deputy doing the count an identifying wristband. (Id. at 12.) Following the 11:00 p.m. count, at 12:00 a.m., razors are passed out to inmates and picked up one hour later. (Id.) Plaintiff notes that the distribution and collection of razors is disruptively loud because the razors are passed

---

[1] The following facts are taken from Plaintiff's complaint (Doc. 1) and are accepted as true for the purpose of this motion. *See Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (In ruling on a motion to dismiss, the court must "accept all material allegations of fact as true").

[2] Plaintiff refers to administrative segregation as solitary confinement. For continuity with the relevant authority, the Court refers to this type of incarceration as administrative segregation.

through the slots in the cell doors. (Id.) Both the sliding of the slots in the cell door and the razor dropping from the slot to the floor on the other side of the door create cacophonic noises which disrupt the night. (Id.) Finally, after razors are collected at about 1:00 a.m., the lights are turned from a bright to a dim setting. (Id.)

In the dim cell lights, those in administrative segregation are allowed their allotted time in the yard, which is an indoor room with no access to the outdoors or sunlight. (Id.) Those in administrative segregation may exercise or otherwise use the yard from 1:00 a.m. to about 3:30 a.m., forcing Plaintiff and other inmates and pretrial detainees in administrative segregation to choose between going to the yard during this time or taking advantage of the dimmed lights and sleeping. (Id. ) At 3:30 a.m., after yard, another count is performed, again requiring inmates to get out of bed and to the cell door to show the deputy an identifying wristband. (Id.) This particular count requires potentially sleeping administrative segregation occupants to wake up. (Id.) During this count, the lights are turned to their bright setting once again. (Id.) Inmates are then served breakfast between 4:00 a.m. and 4:30 a.m. (Id.) After breakfast, the lights are dimmed until 7:00 a.m., at which time the televisions are turned back on and set to the same loud volume. (Id.)

This daily schedule results in inmates and pretrial detainees, including Plaintiff, only being given the opportunity to sleep twice with the lights dimmed for two and a half hours each time. (Id.) However, one of those increments is during the yard time, so the inmate must forego the yard time in order to take advantage of the full five hours of dim lighting per night to sleep.

Plaintiff began experiencing sleep deprivation within one week of his arrival. (Id. at 13.) This led to a multitude of other physical conditions, including headaches, muscle aches, inability to focus and think clearly, eye pain, high blood pressure, a lowered immune system, and severe lethargy and fatigue. (Id.) This sleep deprivation also had psychological effects. Shortly after arriving, Plaintiff began experiencing high levels of stress and anxiety due to the lack of sleep. (Id.)

//

Almost immediately, Plaintiff began filing inmate grievance forms objecting to his placement in administrative segregation. (Id.) Plaintiff filed four total grievances. (Id. at 13, 16.) The grievance form has a place for a floor deputy's signature.[3] The first two of these forms were not signed by a floor deputy, but were delivered on Plaintiff's behalf. (Id. at 13.) The third grievance form was signed by Deputy Martinez on March 30, 2017, before it was delivered on Plaintiff's behalf and the fourth grievance form was signed by Deputy Garcia on April 14, 2017 before being similarly delivered. (Id. at 16.) During this time, Plaintiff also wrote a letter to Sheriff William Gore regarding Plaintiff's complaints. (Id. at 15.)

Plaintiff now brings three causes of action based on the above set of facts. First, Plaintiff claims his Fourteenth Amendment right to due process was violated when Plaintiff was placed in administrative segregation without any notice, and then was denied an opportunity to be heard regarding this placement, despite his explicit request for notice and such a hearing. (Id. at 17.) Second, Plaintiff claims his Eighth Amendment protection against cruel and unusual punishment has been violated by the schedule followed at SDCJ, causing Plaintiff's sleep deprivation. (Id.) Third and finally, Plaintiff claims his Eighth Amendment protection has also been violated both by the yard time being relegated to a sunless indoor room and the only time use of the room is allowed requiring Plaintiff to choose exercise or sleep in the dimmed lights. (Id. at 18.) Plaintiff requests damages and declarative relief. (Id. at 9.)

Plaintiff has named 51 defendants in his complaint, including San Diego County, Sheriff William Gore, and various lieutenants, sergeants, corporals, and deputies who work at SDCJ and Plaintiff personally spoke to. (Id. at 3.) To date, not all of the defendants have been served. Those who have been served and have joined in the motion to dismiss before this Court are: William Gore, Carl Brewer, Thomas Camillieri,

---

[3] Although this place for a signature is noted, Plaintiff does not explain the significance of a having a grievance form signed versus not signed. (Doc. 1 at 13, 16.)

Benjamin Cole, Cristian Davila, Matthew Ellsworth, Gregory Epps, Eric Froistad, Jeremy Hepler, Edgar Huerta, Jesse Johns, Lena Lovelace, Ryan Lovelace, Nathan McKemy, Francis Mondragon, Jin Moon, Joseph Navarro, Patrick Newlander, Anthony Oliver, Christopher Olsen, Christopher Simms, Karl Warren, Anthony White, Kevin Kamoss, Jeffrey Wiliams, Harvey Seeley, Nicolai Ramos, Anthony Gallegos, Frank Bass, and Steven Cerda. (Collectively "Moving Defendants.") Additionally, San Diego County and Deputies Agnew, Stratton, and Zepeda have been served, but have not joined in this motion to dismiss.[4]

## III. DISCUSSION

Moving Defendants move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the following grounds: (1) Plaintiff's housing in administrative segregation does not implicate due process protections, (2) Plaintiff's alleged inability to sleep and the timing of his recreation are insufficient to implicate the Eighth Amendment, and (3) the complaint fails to state any factually plausible claim for personal liability against the numerous defendants. (Doc. 55-1.)

### A. Legal Standard on Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all allegations of material fact pleaded in the complaint as true. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). The Court must also construe the allegations in favor of the nonmoving party and draw all reasonable inferences from them in favor of the nonmoving party. Id. To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to

---

[4] The following defendants were named in Plaintiff's complaint, but have not yet been served: Lieutenants Smith and Goings, Sergeant Fowler, Corporals De La Torre and Garner, and Deputies Martinez, Bullock, Vargas, Gonzalez, De La Cruz, Mendoza, Barrios, Price, Bravo, Martinez, Leon, and Rios. (Doc. 1 at 3.)

relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. 1955). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." <u>Id.</u> at 678, 129 S.Ct. 1937 (quoting <u>Twombly</u>, 550 U.S. at 557, 127 S.Ct. 1955) (internal quotations omitted).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. 1955 (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (alteration in original)). A court need not accept "legal conclusions" as true. <u>Iqbal</u>, 556 U.S. at 678, 129 S.Ct. 1937. "[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011). Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

As a general rule, a court freely grants leave to amend a complaint which has been dismissed. Fed. R. Civ. P. 15(a); <u>Schreiber Distrib. Co. v. Serv–Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." <u>Schreiber Distrib. Co.</u>, 806 F.2d at 1401 (citing

Bonanno v. Thomas, 309 F.2d 320, 322 (9th Cir. 1962)). When a court dismisses a *pro se* litigant's complaint, the court must provide the plaintiff with a statement of the deficiencies in the complaint. Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623–624 (9th Cir. 1988).

**B. 1983 Claim**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution and laws of the United States; and (2) that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). A plaintiff must show a specific constitutional guarantee safeguarding the interests that have been invaded. See Paul v. Davis, 424 U.S. 693 (1976). Plaintiff claims his Fourteenth Amendment right to procedural due process as well as his Eighth Amendment right to be free of cruel and unusual punishment have been invaded. (Doc. 1 at 17-18.)

**C. Placement in Administrative Segregation**

Plaintiff contends his placement in administrative segregation was a violation of his procedural due process rights because he was not afforded notice of the reason for his placement in administrative segregation, a hearing, nor an opportunity to respond to the reasons for his placement. (Id. at 17.) Moving Defendants argue Plaintiff has no liberty interest in being free from administrative segregation. Accordingly, Plaintiff has failed to show a specific constitutional guarantee safeguarding interests that have been invaded, and consequently has not stated a claim for which relief can be granted. (Doc. 55-1 at 4.)

Pretrial detainees are protected from punishment without due process under the Due Process Clause of the Fourteenth Amendment. United States v. Salerno, 481 U.S. 739 (1987); Bell v. Wolfish, 441 U.S. 520, 535-36 (1979). Interests that are procedurally protected by the Due Process Clause may arise from two sources: the Due Process Clause itself and the laws of the states. Meachum v. Fano, 427 U.S. 215, 223-27 (1976). Plaintiff contends he was not afforded due process when he was placed into administrative segregation. Due process for initial placement in administrative segregation for security

7

purposes (compared to placement in administrative segregation for disciplinary reasons) requires only an informal, nonadversary hearing within a reasonable time after the prisoner is segregated, wherein the prisoner is notified of the reasons for the segregation and allowed an opportunity to present his views. Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1986), overruled in part on other grounds, Sandin v. Conner, 515 U.S. 47 (1995). This is notably a less stringent standard than procedural due process generally requires, i.e., a detailed written notice of charges, representation by counsel or counsel-substitute, and an opportunity to present witnesses or a written decision. Id. at 1100–01.

Here, Plaintiff was placed in administrative segregation immediately upon his arrival at SDCJ on August 3, 2016. (Doc. 1 at 11.) According to Plaintiff, no reason was given when he first inquired during his initial transport to administrative segregation; nor was any reason provided after multiple formal inquiries made through inmate requests to "classification" and verbally to floor deputies. (Id. at 1, 13-14.)

Moving Defendants argue Plaintiff was placed into administrative segregation in accordance with the San Diego Sheriff's authority to manage the jail. (Doc. 55-1 at 4-5.) Furthermore, Moving Defendants argue Plaintiff was placed into administrative segregation as part of a general effort to "maintain security and order within the jail." (Id. at 5.)

Despite Moving Defendants' argument, Plaintiff was entitled to the above procedural due process as a pretrial detainee initially entering SDCJ and being placed in administrative segregation. See Toussaint, 801 F.2d at 1100-01. Accordingly, Plaintiff should have received an informal nonadversary hearing within a reasonable time, a notification of the reason for his placement in administrative segregation, and an opportunity at the hearing to present his views. Plaintiff was not provided any of these things. Thus, Plaintiff has shown a specific constitutional guarantee – the Due Process Clause – safeguarding his liberty interest in remaining in the general population as opposed to administrative segregation. It follows then that Plaintiff has stated a sufficient

//

basis for his claim that his right to procedural due process under the Fourteenth Amendment has been violated.

### D. <u>Conditions of Incarceration</u>

Plaintiff states he was a pretrial detainee at the time of the alleged violations. (Doc. 1 at 11.) However, both Plaintiff and Moving Defendants analyze Plaintiff's second and third causes of action under the Eighth Amendment. (<u>Id</u>. at 17-18. Doc. 55-1 at 5-9.) Under the applicable Rule 12(b)(6) standards, the Court accepts Plaintiff's claim that he was a pretrial detainee, and thus analyzes his claims as arising under the due process guarantee of the Fourteenth Amendment which is applicable to the claims, instead of the Eighth Amendment.

In Plaintiff's second and third causes of action, Plaintiff contends his Eighth Amendment right to protection from cruel and unusual punishment was violated. (Doc. 1 at 17-18). The bases of Plaintiff's claims respectively are the conditions causing Plaintiff's sleep deprivation and SDCJ's scheduling yard time in the early morning hours in a sunless room, thus requiring Plaintiff to choose either yard time or sleep. Moving Defendants argue that Plaintiff's inability to sleep and timing of his recreation are insufficient to implicate the Eighth Amendment. (Doc. 55-1 at 5-6.)

Because Plaintiff filed his complaint *pro se* (Doc. 1) and "courts must generally construe *pro se* pleadings liberally," these claims will be considered as brought under the Fourteenth Amendment instead of the Eighth Amendment. <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[T]his [liberal construction] rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, [or] his confusion of various legal theories . . . ").

Plaintiff was a pretrial detainee at the time of the alleged deprivation, instead of a convicted inmate, so his constitutional claims "arise[] from the due process clause of the [F]ourteenth [A]mendment and not from the [E]ighth [A]mendment prohibition against cruel and unusual punishment." <u>Jones v. Johnson</u>, 781 F.2d 769, 771 (9th Cir. 1986)

(citing <u>Bell v. Wolfish</u>, 441 U.S. 520, 573 n. 16 (1979)), <u>overruled on other grounds by</u> <u>Peralta v. Dillard</u>, 744 F.3d 1076 (9th Cir. 2014). "[T]he more protective [F]ourteenth [A]mendment standard applies to conditions of confinement when detainees . . . have not been convicted" of a crime. <u>Gary H. v. Hegstrom</u>, 831 F.2d 1430, 1432 (9th Cir. 1987) (citing <u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982) (civilly committed individuals); <u>Bell</u>, 441 U.S. at 535 n.16 (pretrial detainees)). "[T]he Fourteenth Amendment prohibits all punishment of pretrial detainees. . . ." <u>Demery v. Arpaio</u>, 378 F.3d 1020, 1029 (9th Cir. 2004) (comparing the Fourteenth Amendment to the Eighth Amendment). "This standard differs significantly from the standard relevant to convicted prisoners, who may be subject to punishment so long as it does not violate the Eighth Amendment's bar against cruel and unusual punishment." <u>Pierce v. Cnty. Of Orange</u>, 526 F.3d 1190, 1205 (9th Cir. 2008) (citing <u>Bell</u>, 441 U.S. at 535 n.16).

Thus, because Plaintiff was a pretrial detainee at the time his causes of action arose, his claims would be properly brought and analyzed under the Fourteenth Amendment versus the Eighth Amendment. Under the Fourteenth Amendment, the government is required to do more than provide the "minimal civilized measure of life's necessities," <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981), to non-convicted detainees. To assess the constitutionality of pretrial detention conditions that implicate due process rights protecting liberty interests, a district court must determine whether those conditions amount to punishment of the detainee. <u>Bell</u>, 441 U.S. at 535; <u>Pierce</u>, 526 F.3d at 1205; <u>Demery</u>, 378 F.3d at 1029.

While a convicted inmate may be punished within the restrictions of the Eighth Amendment, a pretrial detainee has yet to be judged guilty of a crime and therefore may not be "punished," but rather only detained to ensure his presence at trial. <u>Bell</u>, 441 U.S. at 535–36. During the detention period, a pretrial detainee may properly be subject to the conditions of the jail so long as they do not amount to punishment. <u>Id</u> at 536–37. But given that pretrial detainees' substantive due process rights under the Fourteenth Amendment and convicted prisoners' rights under the Eighth Amendment are

"comparable," the standard derived from Eighth Amendment jurisprudence is used for both. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing Redman v. County of San Diego, 942 F.2d 1435, 1441 (9th Cir. 1991)).

   *1. Sleep Deprivation*

   Plaintiff presents in his complaint a situation where his cell is brightly illuminated, consistently disrupted by counts, and filled with the various loud noises present in SDCJ. (Doc. 1 at 11-13, 15.) Plaintiff alleges these conditions created an unusually harsh environment that is adverse to sleep. Moving Defendants respond by contending these conditions are incident to being incarcerated. (Doc. 55-1 at 7.) According to Moving Defendants, these conditions are either necessary to preserve the safety of the facility, *i.e.* counts done, or simply uncontrollable by the prison staff, *i.e.* mentally ill patients making noise. (Id. at 7-8. Doc. 1 at 13, where Plaintiff alleges mentally ill inmates "who screamed, yelled, [and] banged loudly" were also a cause of Plaintiff's sleep deprivation.) Either way, Moving Defendants argue the conditions leading to Plaintiff's sleep deprivation do not amount to valid punishments which violate Plaintiff's constitutional rights. (Doc. 55-1 at 6.)

   "'Adequate lighting is one of the fundamental attributes of "adequate shelter" required by the Eighth Amendment.' Moreover, '[t]here is no legitimate penological justification for requiring [inmates] to suffer physical and psychological harm by living in constant illumination.'" Keenan v. Hall, 83 F.3d 1083, 1090 (9th Cir. 1996) (citations and internal quotations omitted; brackets in original) amended by 135 F.3d 1318 (9th Cir. 1998) (where the court held there was a triable issue of fact on a continuous lighting claim where a prisoner was subjected to two large fluorescent lights that were kept on 24 hours a day for six months); see also Hoptowit v. Spellman, 753 F.2d 779, 783 (9th Cir. 1985); Hoptowit v. Ray, 682 F.2d 1237, 1257–58 (9th Cir. 1982). "[P]ublic conceptions of decency inherent in the Eighth Amendment require that [inmates] be housed in an environment that, if not quiet, is at least reasonably free of excess noise." Keenan, 83 F.3d at 1090.

In <u>LeMaire v. Maass</u>, 745 F.Supp. 623, 636 (Ore. 1990), the court there found that 24 hour per day illumination of plaintiff's cell was a violation of plaintiff's rights. The court recognized that in the abstract, the constant illumination was a legitimate penological justification; but, in practice, there was no reason for the jail staff to see into the cells 24 hours per day nor was the staff even near the cells 24 hours per day. Id. This case is clearly distinguishable because Plaintiff was not subjected to 24 hours of bright illumination. Instead, jail staff dimmed the lights during the evening hours, specifically to facilitate sleep. (Doc. 1 at 12. Doc. 55-1 at 8.)

The lighting Plaintiff complains of simply cannot be considered punishment giving rise to a Fourteenth Amendment violation. Here, there are clearly legitimate penological purposes for the bright lights being turned on for 19 hours a day: the facility staff must be able to see into the cells to conduct checks during the nighttime hours. Similarly, the noise level at SDCJ is not so excessive to be considered a violation of Plaintiff's rights. It is unfortunate that Plaintiff cannot sleep in these conditions, and has allegedly suffered many afflictions as a result of his sleep deprivations, but these conditions cannot be considered punishment because they are incidental to detention and not so excessive as to violate Plaintiff's rights.

Because the SDCJ's conditions Plaintiff complains of either serve legitimate penological purposes or are out of the facility staff's control, Plaintiff's claims regarding the conditions causing his sleep deprivation are not a sufficient basis to allege a violation of Plaintiff's rights.

   *2. Denial of Yard Time*

Plaintiff further contends he has been effectively denied the right to go to the yard and exercise because of the early morning hours designated for the activity. (Id.) Moving Defendants classify Plaintiff's complaint as one based on an "inconvenience" rather than an actual deprivation. (Doc. 55-1 at 8-9.) As such, Moving Defendants argue Plaintiff has not stated a claim regarding his access to the yard.

//

"Deprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation." Keenan, 83 F.3d at 1089 (citing Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)), amended by 135 F.3d 1318 (9th Cir. 1998); see also Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005); Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994); Allen v. City of Honolulu, 39 F.3d 936, 938–39 (9th Cir. 1994); LeMaire v. Maass, 12 F.3d 1444, 1457–58 (9th Cir. 1993). However, a "temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997); see also Frost, 152 F.3d at 1130 ("[a] one-time, accidental denial of recreation cannot support a constitutional claim").

Prison officials may restrict outdoor exercise on the basis of weather, unusual circumstances, or disciplinary needs. See Spain, 600 F.2d at 199. "The cost or inconvenience of providing adequate [exercise] facilities[, however,] is not a defense to the imposition of a cruel punishment." Id. at 200. Determining what constitutes adequate exercise requires consideration of "the physical characteristics of the cell and jail and the average length of stay of the inmates." Houseley v. Dodson, 41 F.3d 597, 599 (10th Cir. 1994). For example, in Pierce, 526 F.3d 1190, the pretrial detainees in administrative segregation were typically allowed only 90 minutes weekly for exercise. Id. at 1212. The court there found this allotment was clearly grounds for a violation of § 1983. Id.

Here, however, Plaintiff alleges not that he is wholly denied the opportunity to exercise, but rather that the opportunity is at a time when Plaintiff must choose between exercise and sleep. (Doc. 1 at 12.) Plaintiff, and other inmates and pretrial detainees in administrative segregation, are given the opportunity to exercise between 1:00 a.m. and 3:30 a.m., a two and a half hour period of time. (Id.) However, Plaintiff objects to the fact that this opportunity demands Plaintiff sacrifice half of the daily allotted time with the lights dimmed in order to exercise.

//

//

This perceived inconvenient timing of the opportunity to exercise, which Plaintiff alleges is a violation of his rights, is not a "punishment." Instead, the timing is merely unappealing to Plaintiff. This is not enough to claim a violation of a constitutional right.

Because "the County has considerable discretion to curtail access to exercise based on security concerns," and Plaintiff is not denied the right to exercise entirely, Plaintiff has not shown facts sufficient to state a claim. Pierce, 526 F.3d at 1212 (citing Bell, 441 U.S. at 539 n.23).

Conversely, Plaintiff's claim that the "yard" area is an indoor room with no access to sunlight or the outdoors is a valid claim. Outdoor exercise is extremely important to the psychological and physical well-being of those incarcerated in either a jail or prison. In Spain, the court found the denial of outdoor exercise, and the fresh air enjoyed during outdoor exercise, was a constitutional violation. 600 F.2d 189 (citing Spain v. Procunier, 408 F.Supp 534, 547 (N.D. Cal. 1976)). Here, the lack of *outdoor* exercise provides grounds for a claim that Plaintiff's rights have been violated. Although Plaintiff has not stated a valid claim in regard to the timing of his opportunity to go to the yard and exercise, Plaintiff has stated a valid claim in regard to the lack of *outdoor* yard time.

### E. 1983 Affirmative Participation Requirement

While Plaintiff has stated two legitimate claims under the Fourteenth Amendment, the Court concludes that Moving Defendants lack the personal participation required to be liable under § 1983. A person subjects another to a deprivation of a constitutional right within the meaning of § 1983 if the person does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation complained of. Johnson v. Duffy, 588 F.2d 740 (9th Cir. 1978).

Here, Plaintiff named 51 defendants in his complaint. (Doc. 1 at 3.) These defendants are those jail staff members who Plaintiff "personally spoke to" about his various complaints as well as San Diego County and Sheriff William Gore. (Id. at 3, 14.) Whether Plaintiff's "putting each [defendant] on notice of the specific" complaints is

sufficient to give each defendant an affirmative role in the deprivations is unclear. (Doc. 1 at 14.) However what is clear is that "negligent conduct cannot by definition establish 'affirmative abuse of power' necessary to constitute a due process deprivation." See Daniels v. Williams, 474 U.S. 327, 330–32 (1986).

Plaintiff alleges that he verbally notified each named defendant, except San Diego County and Sheriff Gore, of his perceived deprivations. (Doc. 1 at 14.) Plaintiff states no facts indicating these defendants either affirmatively caused the deprivation, or that after being notified, took any action which would make the defendant an affirmative participant. Instead of alleging the required affirmative action by defendants, Plaintiff has not alleged any further action beyond negligence, which is insufficient to state a claim under § 1983. See Daniels, 474 U.S. at 330–32. Thus, Plaintiff's claims seeming to be valid – Plaintiff's first and third causes of action – fail for this reason and must also be denied.

## IV. CONCLUSION

This Report and Recommendation is submitted to the Honorable Janis L. Sammartino, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c)(1)(c) of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **GRANTING** the Motion to Dismiss.

Any party may file written objections with the Court and serve a copy on all parties on or before **November 27, 2017**. The document should be captioned "Objections to Report and Recommendation." Any reply to the Objections shall be served and filed on or before **December 11, 2017**. The parties are advised that failure to file objections within the specific time may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

//

//

**IT IS SO ORDERED.**

Dated:  November 8, 2017

Hon. Peter C. Lewis
United States Magistrate Judge