UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLIOT SCOTT GRIZZLE,<br><br>                              Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO et al.,<br><br>                              Defendants. | Case No.:  3:17-cv-0813-JLS-PCL<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE RE:**<br><br>**DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS COMPLAINT**<br><br>**[Doc. 64]** |

## I. INTRODUCTION

Elliot Scott Grizzle ("Plaintiff"), a state prisoner proceeding *in forma pauperis*, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging violations of his Eighth and Fourteenth Amendment rights during his incarceration as a pretrial detainee at San Diego County Jail. (Doc. 1.) Presently before the Court is Defendant County of San Diego's ("County" or "the County") motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted. (Doc. 64.)

The Honorable Janis L. Sammartino has referred the matter to the undersigned Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 72.1(c)(1)(d). After a thorough review of the pleadings, supporting documents,

and previous orders of the Court in this case, this Court recommends the motion to dismiss be **<u>GRANTED IN PART</u>**.

## II. BACKGROUND[1]

At the time of filing his complaint, Plaintiff was a pretrial detainee at the San Diego County Jail ("SDCJ"). (Doc. 1 at 10.) Upon his arrival at SDCJ on August 3, 2016, Plaintiff was immediately and inexplicably placed into administrative segregation.[2] (Doc. 1 at 11.) While being escorted to administrative segregation, Plaintiff asked the escorting officers why he was being placed into administrative segregation when during his previous incarceration, he had been housed in the general population. (*Id*.) The escorting officers did not know, and directed Plaintiff to file such an inquiry through an inmate request directed to "classification." (*Id*.) On August 4, 2016, Plaintiff filed the inmate request as directed, giving the request to an SDCJ staff member during a mail pickup, but Plaintiff's request was never answered by "classification." (*Id*.)

Plaintiff claims he has suffered multiple harms as a result of his placement in administrative segregation. Plaintiff argues that due to SDCJ's daily schedule in the administrative segregation unit, Plaintiff has suffered from severe sleep deprivation, which has led to a slew of other physical and psychological issues. (*Id*. at 13.) In administrative segregation, televisions are turned on at 7 a.m. and set to a high volume. (*Id*. at 12.) Televisions remain on until 9:45 p.m. during the week and 10:45 p.m. on the weekends. (*Id*. at 11) After the televisions are turned off for the night, however, the lights still remain on a bright setting. (*Id*.) At 11:00 p.m., a count is done, requiring Plaintiff to get out of bed and to the cell door to show the SDCJ floor deputy doing the count an

---

[1] The following facts are taken from Plaintiff's complaint (Doc. 1) and are accepted as true for the purpose of this motion. *See Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (In ruling on a motion to dismiss, the court must "accept all material allegations of fact as true"). The Court notes this is the same recitation of facts as in the Report and Recommendation submitted on the previous motion to dismiss. (Doc. 63.)

[2] Plaintiff refers to administrative segregation as solitary confinement. For continuity with the relevant authority, the Court refers to this type of incarceration as administrative segregation.

identifying wristband. (*Id*. at 12.) Following the 11:00 p.m. count, at 12:00 a.m., razors are passed out to inmates and picked up one hour later. (*Id*.) Plaintiff notes that the distribution and collection of razors is disruptively loud because the razors are passed through the slots in the cell doors. (*Id*.) Both the sliding of the slots in the cell door and the razor dropping from the slot to the floor on the other side of the door create cacophonic noises which disrupt the night. (*Id*.) Finally, after razors are collected at about 1:00 a.m., the lights are turned from a bright to a dim setting. (*Id*.)

In the dim cell lights, those in administrative segregation are allowed their allotted time in the yard, which is an indoor room with no access to the outdoors or sunlight. (*Id*.) Those in administrative segregation may exercise or otherwise use the yard from 1:00 a.m. to about 3:30 a.m., forcing Plaintiff and other inmates and pretrial detainees in administrative segregation to choose between going to the yard during this time or taking advantage of the dimmed lights and sleeping. (*Id*. ) At 3:30 a.m., after yard, another count is performed, again requiring inmates to get out of bed and to the cell door to show the deputy an identifying wristband. (*Id*.) This particular count requires potentially sleeping administrative segregation occupants to wake up. (*Id*.) During this count, the lights are turned to their bright setting once again. (*Id*.) Inmates are then served breakfast between 4:00 a.m. and 4:30 a.m. (*Id*.) After breakfast, the lights are dimmed until 7:00 a.m., at which time the televisions are turned back on and set to the same loud volume. (*Id*.)

This daily schedule results in inmates and pretrial detainees, including Plaintiff, only being given the opportunity to sleep twice with the lights dimmed for two and a half hours each time. (*Id*.) However, one of those increments is during the yard time, so the inmate must forego the yard time in order to take advantage of the full five hours of dim lighting per night to sleep.

Plaintiff began experiencing sleep deprivation within one week of his arrival. (*Id*. at 13.) This led to a multitude of other physical conditions, including headaches, muscle aches, inability to focus and think clearly, eye pain, high blood pressure, a lowered immune system, and severe lethargy and fatigue. (*Id*.) This sleep deprivation also had

psychological effects. Shortly after arriving, Plaintiff began experiencing high levels of stress and anxiety due to the lack of sleep. (*Id*.)

Almost immediately, Plaintiff began filing inmate grievance forms objecting to his placement in administrative segregation. (*Id*.) Plaintiff filed four total grievances. (*Id*. at 13, 16.) The grievance form has a place for a floor deputy's signature.[3] The first two of these forms were not signed by a floor deputy, but were delivered on Plaintiff's behalf. (*Id*. at 13.) The third grievance form was signed by Deputy Martinez on March 30, 2017, before it was delivered on Plaintiff's behalf and the fourth grievance form was signed by Deputy Garcia on April 14, 2017 before being similarly delivered. (*Id*. at 16.) During this time, Plaintiff also wrote a letter to Sheriff William Gore regarding Plaintiff's complaints. (*Id*. at 15.)

Plaintiff now brings three causes of action based on the above set of facts. First, Plaintiff claims his Fourteenth Amendment right to due process was violated when Plaintiff was placed in administrative segregation without any notice, and then was denied an opportunity to be heard regarding this placement, despite his explicit request for notice and such a hearing. (*Id*. at 17.) Second, Plaintiff claims his Eighth Amendment protection against cruel and unusual punishment has been violated by the schedule followed at SDCJ, causing Plaintiff's sleep deprivation. (*Id*.) Third and finally, Plaintiff claims his Eighth Amendment protection has also been violated both by the yard time being relegated to a sunless indoor room and the only time use of the room is allowed requiring Plaintiff to choose exercise or sleep in the dimmed lights. (*Id*. at 18.) Plaintiff requests damages and declarative relief. (*Id*. at 9.)

Plaintiff originally named 51 defendants in his complaint, including San Diego County, Sheriff William Gore, and various lieutenants, sergeants, corporals, and deputies who work at SDCJ and Plaintiff personally spoke to. (*Id*. at 3.) Those defendants besides

---

[3] Although this place for a signature is noted, Plaintiff does not explain the significance of a having a grievance form signed versus not signed. (Doc. 1 at 13, 16.)

the County of San Diego previously filed a motion to dismiss. (Doc. 55.) This motion was granted in part in that all the joining defendants were dismissed except for Sheriff William Gore. (Doc. 73 at 16.) Similarly, the Court dismissed a portion of Plaintiff's third cause of action alleging an Eighth Amendment violation based on sleep deprivation and excessive noise. (*Id*.)

## III. DISCUSSION

The County now moves to dismiss Plaintiff's complaint on three grounds: (1) the County is not a proper defendant in this case, (2) Plaintiff's due process rights were not violated when Plaintiff was placed into administrative segregation, and (3) Plaintiff's Eighth Amendment rights were not violated as a result of SDCJ's yard time policy for inmates housed in administrative segregation. (Doc. 64-1.)

### A. Legal Standard on Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all allegations of material fact pleaded in the complaint as true. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The Court must also construe the allegations in favor of the nonmoving party and draw all reasonable inferences from them in favor of the nonmoving party. *Id*. To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

As a general rule, a court freely grants leave to amend a complaint which has been dismissed. Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co.*, 806 F.2d at 1401 (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962)). When a court dismisses a *pro se* litigant's complaint, the court must provide the plaintiff with a statement of the deficiencies in the complaint. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623–624 (9th Cir. 1988).

### B. <u>County as a Proper Defendant</u>

Plaintiff, in his complaint, alleges the County is liable for Plaintiff's alleged constitutional violations because "the San Diego County Municipality, through it's [sic] Sheriff William Gore, established and ordered" the daily schedule Plaintiff is required to follow. (Doc. 1 at 11.) The County argues Plaintiff cannot hold it liable under such a

3:17-cv-0813-JLS-PCL

theory of vicarious liability as Plaintiff does here. (Doc. 64-1 at 4.) Instead, Plaintiff must point to some official policy which has caused his constitutional violation to impose such liability. (*Id*.)

A municipality or other local government may be liable under Section 1983 if the governmental body "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 691-92 (1978). While municipalities cannot be held vicariously liable under Section 1983 for their employees' actions, municipalities can be liable for policies, customs, practices, and or procedures that violate constitutionally protected rights. *Id*. at 691.

As a prerequisite to establishing Section 1983 municipal liability, the plaintiff must satisfy one of three conditions:

> First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy. Whether a particular official has final policy-making authority is a question of state law. Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

*Gillette v. Delmore*, 979 F.2d 1342, 1346-1347 (9th Cir. 1992) (citations and internal quotations omitted), *cert. denied*, 510 U.S. 932 (1993).

After proving that one of the three circumstances existed, a plaintiff must also show that the circumstance was (1) the cause in fact and (2) the proximate cause of the constitutional deprivation. *Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also City of Springfield v. Kibbe*, 480 U.S. 257, 266-68 (1987) (discussing causation requirement in section 1983 municipal liability cases).

Although Plaintiff need only show one condition is satisfied, Plaintiff contends all three of the conditions are in fact evidenced in this case. Plaintiff first argues while he

may not have "articulated a specific policy that was violated," Plaintiff did indicate there was an official policy. (Doc. 70 at 3.) Further, even if the Court finds no such official written policy exists, "a standard operating procedure of a local government entity is sufficient for liability." (*Id.*) Second, Plaintiff argues because Sheriff Gore is an official with final policymaking authority, and Sheriff Gore "absolutely appeared to be . . . implement[ing] . . . an official government policy," the second condition is also satisfied. (*Id.* at 3-4.) Finally, Plaintiff states Sheriff Gore "did ratify the actions of jail deputies by delegating the duty of investigating and correcting any violations to [the] administrative sergeant at the jail." (*Id.* at 4.)

### 1. *Government policy or longstanding practice or custom*

Absent a formal governmental policy, Plaintiff must show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Gillette*, 979 F.2d at 1346-47. Under Ninth Circuit law, a custom or practice can be "inferred from widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233-34 (9th Cir. 2011) (quoting *Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001)). Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984). *See also Meehan v. Los Angeles County*, 856 F.2d 102 (9th Cir. 1988) (two incidents not sufficient to establish custom); *Davis v. Ellensburg*, 869 F.2d 1230 (9th Cir. 1989) (manner of one arrest insufficient to establish policy).

In arguing there was an official policy, or a longstanding practice or custom, Plaintiff alleges the County "established and ordered" a "day program" schedule the jail was to follow for inmates in administrative segregation. (Doc. 1 at 11.) The County argues because "Plaintiff does not cite to any official County policy that allows for

deputies to violate the Eighth or Fourteenth Amendments," Plaintiff has not satisfied this condition. (Doc. 64-1 at 4.)

In order to hold a municipality liable under this condition, Plaintiff must demonstrate "the constitutional tort was the result of a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity.'" *Privce v. Sery*, 413 F.3d 962, 966 (9th Cir. 2008) (quoting *Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968, 984-85 (9th Cir. 2002)). To prevail, a plaintiff must show (1) that the plaintiff "possessed a constitutional right of which [he or she] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks omitted).

The Court finds Plaintiff's allegations are insufficient to state a claim of municipal liability under the policy or custom theory. The only pertinent allegation in the complaint demonstrates the conclusory nature of Plaintiff's allegations: "The San Diego County Municipality, through it's [*sic*] Sheriff William Gore, established and ordered the following daily program." (Doc. 1 at 11.) Instead of developing an argument showing all the elements are met, Plaintiff makes one general statement referencing the County. This single sentence is clearly insufficient to show municipal liability under this the government policy or longstanding practice or custom theory. *See Tillery v. Lollis*, 2015 U.S. Dist. LEXIS 106845, *39 (E.D. Cal. Aug. 12, 2015) (where the court found a single sentence, conclusory allegation that defendants "acted pursuant to official policies" of a municipality was insufficient to show municipal liability under the policy or custom theory).

### 2. *Official with final policy making authority*

The second circumstance under which a municipality may incur section 1983 liability is when the individual who committed the constitutional tort was an official with "final policy-making authority" making the challenged action itself constitute an act of

official government policy. *Gillette*, 979 F.2d at 1346. In *Pembaur v. Cincinnati*, 475 U.S. 469 (1986), the Supreme Court held that "municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. . . . Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority . . . ." *Id*. at 481-83. Whether a particular official has final policy making authority is a question of state law. *Gillette*, 979 F.2d at 1346.

"[N]ot every decision by municipal officers automatically subjects the municipality to [Section] 1983 liability." *Pembaur*, 475 U.S. at 481. The *Pembaur* Court stressed that "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481 (emphasis added). "The fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id*. at 481-482. Therefore, "municipal liability under [Section] 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id*. at 483; *see also Collins v. City of San Diego*, 841 F.2d 337, 341-342 (9th Cir. 1988). Because the question of final policymaking authority is rooted in state law, the Court looks to California law to determine whether Sheriff Gore had such authority. *See McMillian v. Monroe County*, 520 U.S. 781, 786 (1997).

In California, "the sheriff shall take charge of and be the sole and exclusive authority to keep the county jail and the prisoners in it. . . ." Cal. Gov. Code § 26605. In a legislative note to this California statute, the Legislature found "the sheriff, being the chief law enforcement officer of the county . . . ha[s] the sole and exclusive authority for the keeping of the jails and the prisoners therein." 1993 Cal. S.B. 911 § 1(b). Thus, Sheriff Gore did in fact have final policy making authority. This authority clearly included the keeping of prisoners, which can be construed to mean the housing of said

prisoners and the decision regarding which unit to house the prisoners in. *See* Cal. Pen. Code § 4000, Gov. Code §§ 26605, 26610. Therefore, the decisions made by Sheriff Gore constituted official governmental policy decisions. This condition is thus satisfied.

### 3. *Ratification by an official with final policy making authority*

*Gillette*'s ratification test is satisfied if a plaintiff can "prove that an official with final policy-making authority ratified a subordinate's decision or action and the basis for it." *Gillette*, 979 F.2d at 1346-1347; *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Plaintiff argues this condition is satisfied because Sheriff Gore delegated the duty of investigating and correcting any violations of Plaintiff's constitutional rights to the administrative sergeant. (Doc. 70 at 4.) In doing so, according to Plaintiff, Sheriff Gore also ratified the decisions of the administrative sergeant, a subordinate. 1993 Cal. S.B. 911 ("Custodial officers of a county shall be employees of, and under the authority of, the sheriff, . . . ."). Respondent argues that neither Sheriff Gore, nor any other named defendant, committed any actions which violated Plaintiff's constitutional rights, thus there could be no ratification of such acts.

As ruled in the Court's Order of April 3, 2018, the Court has found there is enough evidence for specific portions of Plaintiff's claims to survive a motion to dismiss. (Doc. 73.) Given this finding, any violation of Plaintiff's rights was ratified by Sheriff Gore once his administrative sergeant was made aware of the facts and failed to take action to cure the violation. As pled and read in a light most favorable to Plaintiff, Plaintiff has sufficiently stated his constitutional rights to both procedural and substantive due process were violated. (*See* Doc. 73 at 4-5, 11, 12.) This condition is also satisfied.

Because Plaintiff has shown two of the three conditions are satisfied, the County can validly be held liable for any violations of Plaintiff's constitutional rights. The Court now turns to discuss those alleged violations.

### C. **Placement in Administrative Segregation**

Plaintiff contends his placement in administrative segregation was a violation of his procedural due process rights because he was not afforded notice of the reason for his

placement in administrative segregation, a hearing, nor an opportunity to respond to the reasons for his placement. (*Id*. at 17.) The County, in its motion to dismiss, makes the same argument as the previous motion to dismiss filed by the additional defendants. (*Compare* Doc. 55-1 at 4-5, *with* Doc. 64-1 at 5-6.) Both motions argue Plaintiff has no liberty interest in being free from administrative segregation; and accordingly, that Plaintiff has failed to show a specific constitutional guarantee safeguarding interests that have been invaded. (Doc. 55-1 at 4; Doc. 64-1 at 6.) Consequently, according to the County, Plaintiff has not stated a claim for which relief can be granted. (Doc. 64-1 at 6.)

The County also adds at the end of its argument to this extent, one additional sentence: "Plaintiff has not identified a County policy that caused an alleged due process violation based on his classification so the motion to dismiss should be granted." (Doc. 64-1 at 6.) As previously discussed herein, because Plaintiff can show there was action taken by, or ratified by, an official with policy making authority, Sheriff Gore, there need not be an official County policy which caused the violation of Plaintiff's rights. Instead, Plaintiff can assert municipal liability against the County through Sheriff Gore's actions. *See Gillette*, 979 F.2d at 1346-47. This additional sentence included in Defendant County of San Diego's argument is therefore unpersuasive and does not change the Court's determination.

Because the County argued on the exact same grounds as the previous motion to dismiss (Doc. 55-1), the Court will defer to the Court's order regarding the previous motion to dismiss. (Doc. 73 at 5.) Therein, the Court found:

> Plaintiff alleges his placement in solitary confinement is a violation of the Fourteenth Amendment because he has not received verbal or written notice as to the reason for the confinement. (Compl. 17.) Moving Defendants argue that Plaintiff has no Fourteenth Amendment claim because administrative segregation does not implicate Due Process protections. (MTD 4.)
>
> Due process requires that "[p]rison officials must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated" for administrative purposes. *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v.*

*Connor*, 515 U.S. 472 (1995). In addition, "prison officials must inform the prisoner of the charges against the prisoner or their reasons for segregation" and "allow the prisoner to present his view." *Id*. The prisoner, however, is not entitled to "detailed written notice of charges, representation of counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Id*. at 1100–01.

Here, Plaintiff alleges he was immediately placed in administrative segregation upon arrival to San Diego County Jail ("SDCJ") on August 3, 2016. (Compl. 11.) Plaintiff asked why he was placed in confinement, but was denied an adequate answer. (*Id.*) On August 4, 2016, Plaintiff filed an inmate request "seeking notice of the reason for plaintiff's placement in solitary confinement." (*Id.*) Plaintiff never received a response back. (*Id.*) After one week in administrative segregation, Plaintiff filled out a grievance form "objecting to his placement in solitary confinement and the complete denial of due process in the form of notice, hearing and periodic review." (*Id.* at 13.) Plaintiff never received a response back about the grievance form. (*Id.*) Plaintiff filled out another grievance form contesting his placement in administrative segregation without due process on March 30, 2017. (*Id.* at 16.) Plaintiff again received no response to the grievance form. (*Id.*)

Moving Defendants argue that Plaintiff's placement in administrative segregation does not implicate Due Process rights. (MTD 4.) Moving Defendants also claim Plaintiff's placement in administrative segregation was within the San Diego Sheriff's authority to manage the jail. (*Id.* at 4–5.) Judge Lewis found that Plaintiff's Fourteenth Amendment Right to Due Process was violated and recommends the Court deny the Motion to Dismiss for this claim. (R&R 8–9.) Moving Defendants have not objected to Judge Lewis's recommendation.

Plaintiff should have received (1) an informal, nonadversary hearing within a reasonable time after being placed in administrative segregation for administrative purposes, (2) a written decision describing the reasons for placing him in administrative segregation, and (3) an opportunity to present his view. *Toussaint*, 801 F.2d at 1100. Plaintiff did not receive any of these recognized rights upon being placed in administrative segregation. The Court finds the denial of an informal, nonadversary hearing within a reasonable time after administrative segregation is a constitutional violation. The Court agrees with Judge Lewis that Plaintiff has sufficient stated a claim with regards to placement in administrative segregation. The Court **ADOPTS** the R&R as to this claim. Moving Defendants' Motion to Dismiss this claim is **DENIED**.

(*Id.*) Accordingly, Defendant County of San Diego's motion to dismiss this claim is DENIED.

### D. <u>Conditions of Incarceration</u>

Plaintiff states he was a pretrial detainee at the time of the alleged violations. (Doc. 1 at 11.) However, both Plaintiff and Defendant County of San Diego analyze Plaintiff's second and third causes of action under the Eighth Amendment. (*Id*. at 17-18. Doc 64-1 at 6-10.) Under the applicable Rule 12(b)(6) standards, the Court accepts Plaintiff's claim that he was a pretrial detainee, and thus analyzes his claims as arising under the due process guarantee of the Fourteenth Amendment which is applicable to the claims, instead of the Eighth Amendment.

In Plaintiff's second and third causes of action, Plaintiff contends his Eighth Amendment right to protection from cruel and unusual punishment was violated. (Doc. 1 at 17-18). The bases of Plaintiff's claims respectively are the conditions causing Plaintiff's sleep deprivation and SDCJ's scheduling yard time in the early morning hours in a sunless room, thus requiring Plaintiff to choose either yard time or sleep. The County argues that Plaintiff's inability to sleep and timing of his recreation are insufficient to implicate the Eighth Amendment. (Doc. 64-1 at 7-9.)

Again, in this section of its motion, the County makes an identical argument for dismissing Plaintiff's complaint as was argued in the previous motion. (*Compare* Doc. 55-1 at 5-9, *with* Doc. 64-1 at 6-10.) However, Defendant County of San Diego does add an additional section into the argument regarding the constitutionality of Plaintiff's yard time's location. (Doc. 64-1 at 10.) Despite the seeming novelty of this argument, the argument was in fact presented during the objection phase to the Report and Recommendation issued for the previous motion to dismiss. (Doc. 69 at 3.) There, the then moving defendants made the argument that the location of Plaintiff's recreational yard time was constitutional given the urban environment of SDCJ. (*Id.*) Because the arguments provided by the County in its motion to dismiss have been previously

addressed by the Court, Defendant County of San Diego's motion to dismiss this claim

will be decided according to the Court's previous ruling:

### III. Conditions of Incarceration

[…] The Fourteenth Amendment protects the rights of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004) (quoting *Bell*, 441 U.S. at 535). During the period of detention prior to trial, a pretrial detainee may be properly subject to the conditions of the jail so long as they do not amount to punishment. *Bell*, 441 U.S. at 536–37. "Unless there is evidence of intent to punish, then those conditions or restrictions that are reasonably related to legitimate penological objectives do not violate a pretrial detainee's right to be free from punishment." *Hatter v. Dyer*, 154 F. Supp. 3d 940, 945 (C.D. Cal. 2015) (citing *Block v. Rutherford*, 468 U.S. 576, 584 (1984)). "While a pretrial detainee's right to be free from punishment is grounded in the Due Process Clause, courts borrow from Eighth Amendment jurisprudence when analyzing the rights of pretrial detainees." *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008). The Court will analyze Plaintiff's second and third causes of action under the Fourteenth Amendment.

### A. Sleep Deprivation

Plaintiff alleges his constitutional rights were violated because he was placed in a brightly illuminated prison cell with constant disruptions and was deprived of sleep. (Compl. 11–13, 15, 17.) Moving Defendants do not dispute that Plaintiff was subject to illumination and noise but argue that Plaintiff's inability to sleep was incidental to incarceration and there are adequate penological justifications for the lighting being turned on nineteen hours a day and sounds that resulted in loss of sleep. (MTD 7.) Moving Defendants assert that Plaintiff's loss of sleep does not constitute a constitutional violation. (*Id*. at 6.)

### 1. Constant Illumination Claim

Plaintiff asserts that he was deprived of sleep due to constant illumination in his prison cell. (Compl. 12.) Moving Defendants argue that there are adequate penological justifications for the lighting practices at SDCJ. (MTD 7.) Judge Lewis found that there was a legitimate penological purpose for lights being turned on for nineteen hours a day and the lighting did not constitute punishment. (R&R 12.) Judge Lewis reasoned that because the lighting did not constitute punishment, Plaintiff has not sufficiently stated a constitutional violation. (*Id.*)

Various courts have analyzed the issue of illuminated prison cells. In

*LeMaire v. Maass*, the court held that the plaintiff's rights had been violated when he alleged he had been subjected to constant illumination for twenty-four hours a day. 745 F. Supp. 623, 636 (D. Or. 1990), *vacated on other grounds*, 12 F.3d 1444 (9th Cir. 1993). The court determined "there is no legitimate penological justification for requiring plaintiff to suffer physical and physiological harm by living in constant illumination" where constant illumination meant twenty-four hours of lighting per day. *Id.* The court based its finding on expert testimony that twenty-four hour per day lighting "makes sleep difficult and exacerbates the harm" and on the fact that the defendants there did not cite to any legitimate penological justification for the constant lighting. *Id.* In *Keenan v. Hall*, the Ninth Circuit relied on *LeMaire* and determined that there was a triable issue of fact on a continuous lighting claim where a prisoner was subjected to two large fluorescent lights that were kept on twenty-four hours a day for six months, and the prisoner claimed that the lighting caused him "'grave sleeping problems' and other and psychological problems." 83 F.3d 1083, 1091 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998). The court noted that the prison officials in that case had "no legitimate penological justification for requiring inmates to suffer physical and psychological harm by living in constant illumination." *Id.* at 1090.

In contrast, the prisoner in *Hampton v. Ryan* was confined to a prison cell that was illuminated but dimly lit for six hours on weekdays and four hours on weekends. No. CV 03-1706-PHX-NVW, 2006 WL 3497780, at *35–37 (D. Ariz. Dec. 4, 2006) *aff'd*, 288 Fed. Appx. 404 (9th Cir. 2008). During this time, the security lights were dimmed to the brightness of a child's nightlight in order to facilitate sleep. *See id.* The court found that the illumination was not punitive in nature and that there was a penological justification for the security lights because they "allow[] for regular security checks on inmates while maintaining officer safety." *Id*. at *37.

In *Walker*, the plaintiffs relied on *Keenan* and *LeMaire* to support their assertion that twenty-four hour illumination violated their constitutional rights. *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1013–14 (S.D. Cal. 2006). The court determined that the lighting conditions in those two cases were constitutional violations because of the alleged physiological harm caused by the lighting, not because the lights were turned on. *Id.* at 1014. The defendants in *Walker* asserted there was a penological justification for the twenty-four hour lighting because the lighting permitted guards to perform cell counts. *See id.* at 1015. The court found "[c]ontinuous low-wattage lighting may [] be permissible where it is based on a legitimate prison security concern." *Id*. (citing *King v. Frank*, 371 F. Supp. 2d 977 (W.D. Wis. 2005)). The court determined the plaintiff had not pled a

constitutional violation. *See id.*

The present case is different from *LeMaire*, because Plaintiff has not alleged he was subject to constant bright light illumination during his detention. SDJC dims the cell lighting for five hours during the night to allow inmates to sleep, while still permitting officers to see inside the cells to monitor inmates. (Compl. 12; MTD 8.) Thus, this case is more similar to *Hampton* and *Walker*, because Plaintiff is not subject to constant bright light illumination and the illumination has a penological justification which is to allow security guards to monitor inmates at night. Moving Defendants justify the lighting conditions by stating that "officers need to be able to see inside cells in order to monitor inmates during the night." (MTD 8.) This Court finds the lighting conditions do not constitute punishment, therefore Plaintiff has not alleged a constitutional violation.

In Plaintiff's Objection to the R&R, Plaintiff does not present any new arguments that were not previously addressed in his Opposition to Motion to Dismiss. (Obj. 3–4.) Plaintiff also requests leave to amend to properly plead the sleep deprivation claim. (Obj. 5.) Having reviewed Judge Lewis's R&R, as well as Plaintiff's Objection to the R&R, the Court **OVERRULES** Plaintiff's Objection as to this claim, **ADOPTS** the R&R, and **GRANTS** Moving Defendants' Motion to Dismiss this claim.

### 2. Excessive Noise Claim

Plaintiff also alleges that mentally ill inmates' screaming, banging, and throwing of feces and trash hindered Plaintiff's ability to sleep. (Compl. 13.) Moving Defendants argue that these noises are out of their control and are incidental to incarceration. (MTD 7.) Judge Lewis found the noise conditions were not so excessive as to amount to a violation of Plaintiff's right. (R&R 12.) Again, Plaintiff objects to the R&R as to this issue.[4] (Obj. 3.)

"[T]he Eighth Amendment requires that [inmates] be housed in an environment that, if not quiet, is at least reasonably free of excess noise." *Keenan*, 83 F.3d at 1091 (second alteration in original) (quoting *Toussaint v. McCarthy*, 597 F. Supp. 1388, 1397 (N.D. Cal. 1984), *aff'd in part, rev'd in part on other grounds*, 801 F.2d 1080 (9th Cir. 1986)). In *Keenan*, the court determined the plaintiff had produced sufficient evidence to state an issue of material fact because he alleged "that at all times of day and night" inmates "were screaming, wailing, crying, singing, and yelling" and there was "a constant, loud banging" for a period of six months. *Id.* at 1090. Similarly, the court in *Toussaint* found that an "unrelenting, nerve-racking din" constituted excess noise such that it violated the inmate's Eighth Amendment rights. 597 F. Supp. at 1397–98; *but see Mendoza v. Blodgett*, No. C-89-770-JBH, 1990 WL 263527, at *2, 5 (E.D. Wash. Dec. 21, 1990)

(holding that the prisoner's one night without sleep did not rise to the level of a constitutional violation).

Unlike in *Keenan* and *Toussaint*, Plaintiff here has not alleged how often the noise by other inmates caused him sleep deprivation. Plaintiff has only broadly alleged "inmates [] screamed, yelled, banged loudly, threw feces and trash." (Compl. 13.) Plaintiff has not stated how often the noise occurred, nor that it was constant. The Court cannot find that the noise is "excessive" and therefore, Plaintiff has not alleged the noise level violates his constitutional rights. *Keenan*, 83 F.3d at 1091.

In sum, Plaintiff has not presented sufficient facts to support his assertion that lighting conditions and noise levels constitute punishment, therefore Plaintiff has not sufficiently stated a Fourteenth Amendment due process right violation. This Court **ADOPTS** the R&R, **OVERRULES** Plaintiff's Objections to the R&R, and **GRANTS** Moving Defendants' Motion to Dismiss this claim.

### *B. Denial of Yard Time*

[…] "Deprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation." *Keenan*, 83 F.3d at 1089 (citing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)). In *Spain*, the court recognized "some form of regular outdoor exercise is extremely important to the psychological and physical well-being of the inmates." 600 F.2d at 199. "[P]ractical difficulties that arise in administering a prison facility from time to time might justify an occasional and brief deprivation of an inmate's opportunity to exercise outside." *Allen v. Sakai*, 48 F.3d 1082, 1088 (9th Cir. 1994). However, "the cost or inconvenience of providing adequate [exercise] facilities is not a defense to the imposition of a cruel punishment." *Spain*, 600 F.2d at 200.

### *1. Choice Between Sleep and Exercise*

Plaintiff first alleges that his constitutional rights have been violated because he had to choose between exercise and sleep. (Compl. 15.) He argues the only time he is permitted exercise, from 1:00 a.m. to 3:30 a.m., is during one of the two blocks of time where the lights are dimmed in his cell. Moving Defendants argue that the timing of Plaintiff's recreation is not a violation because Plaintiff has been allotted time to exercise even if the timing is unappealing to Plaintiff. (MTD 8.) Judge Lewis found that Plaintiff had not sufficiently stated a claim because the inconvenient timing of exercise time was not a punishment and thus not a Constitutional violation. (R&R 14.)

In his objections to the R&R, Plaintiff cites to *Allen v. City of Honolulu*, where the court determined "an inmate cannot be forced to sacrifice one constitutionally protected right solely because another is

respected." 39 F.3d 936, 938–39 (9th Cir. 1994). (Obj 4.) There, the prisoner had to choose between exercise and library time. *Id.* The court found for the prisoner, because forcing a prisoner to choose between two constitutionally protected rights was a violation and the prison official offered no justification for his failure to afford the prisoner with both law library and exercise time. *Id.; see also Hebbe v. Pliler* 627 F.3d 338 (9th Cir. 2010) (finding the prisoner had sufficiently alleged a constitutional violation as the prisoner was forced to choose between exercise and law library time).

Similarly here, Plaintiff alleges he must choose between two recognized rights, exercise and sleep. Moving Defendants acknowledge that SDCJ must provide a minimum of three hours of recreation time over a period of seven days. (MTD 8 (citing *Minimum Standards for Local Detention Facilities*, Title 15-Crime Prevention & Corrections, § 1065 (2012)).) The *Minimum Standards for Local Detention Facilities* is authorized by California Penal Code § 6030, which requires Board of State and Community Corrections to establish minimum standards for local correctional facilities. Inmates are also entitled to confinement conditions which do not result in chronic sleep deprivation. *See Keenan*, 83 F.3d at 1090; *Chappell v. Mandeville*, 706 F.3d 1052, 1060 (9th Cir. 2013).

It is true that SDJC provides Plaintiff with more than the required time for exercise. If Plaintiff exercises even two days of the week, he could exercise for 5 hours per week, which is more than is required by the *Minimum Standards.* Moving Defendants argue "while the deputies may have been aware of the inconvenience of the timing, Plaintiff has also not set forth any facts that deputies did not have a valid reason for the scheduling of his recreation time." (MTD 9). But what is lacking is Moving Defendants' assertion of any valid reason for scheduling the recreation time during the exact period the lights are dimmed to permit sleeping. Without any valid justification to force inmates to choose between these two protected rights, the Court finds Plaintiff has pled a constitutional violation. This Court **REJECTS** the R&R as to this claim and **DENIES** Defendants' Motion to Dismiss.

### 2. Denial of Outdoor Exercise

Plaintiff also claims that he has been denied access to outdoor exercise for eight months. (Compl. 1, 12.) SDCJ allows administrative segregation inmates and pretrial detainees exercise time in the "recreation yard" for two and half hours per day. (*Id.*) The "recreation yard" is an enclosed room with no direct sunlight. (*Id.*) Judge Lewis found that the lack of outdoor exercise was a constitutional violation and recommended the Court deny the Motion to Dismiss as to this claim. (R&R 14.) Moving Defendants object and argue that due to the constraints of urban jails,

Plaintiff's allegations of lack of outdoor exercise does not rise to a constitutional violation. (Reply R&R 3.) Moving Defendants assert that the urban environments limits the facility from having an outside recreation yard. (*Id.*)

In *Spain*, the court held that a prison's policy of not affording outdoor recreation violated the Eighth Amendment. *Spain*, 600 F.2d at 200; *see also Sakai*, 48 F.3d at 1087–88 (finding a constitutional violation when the prisoner had only been allowed forty-five minutes of outdoor exercise per week for a period of six weeks); *Keenan*, 83 F.3d at 1090 (reversing summary judgment because the plaintiff had presented sufficient evidence to proceed on his Eight Amendment violation claim as his exercise was confined to a 10 foot by 12 foot room). In *Lopez v. Smith*, the court found the prisoner had sufficiently stated a constitutional violation as articulated by the standard in *Sakai* when the prisoner had been denied all outdoor exercise for a period of forty-five days. 203 F.3d 1122, 1133 (9th Cir. 2000). Here, Plaintiff has alleged a greater harm than in *Lopez v. Smith*, as Plaintiff had no outdoor exercise for a period of eight months. (Compl. 1, 13.)

Moving Defendants object to the R&R's finding that the denial of outdoor recreation was a constitutional violation because Ninth Circuit precedent does not address jails in an urban setting. (Reply R&R 3.) Moving Defendants assert that the urban setting of the jail prevents SDCJ from allowing inmates outdoor recreation, but Moving Defendants do not claim that is impossible to provide outdoor exercise, especially to inmates that are housed at SDCJ for an extended period of time. (*Id.*) In *Spain*, the court determined that "[t]he cost or inconvenience of providing adequate [exercise] facilities [] is not a defense to the imposition of cruel punishment." *Spain*, 600 F.2d at 200. There, the court based its decision on the fact that the denial of outdoor recreation was not temporary as adjustment center prisoners had no outdoor recreation for four years and because the prison had failed to give adequate justification as to why adjustment center inmates were not allowed outdoor exercise for the duration of their confinement in the adjustment center. *Id.* The case at hand is similar to *Spain* because the denial of outdoor exercise was not temporary as Plaintiff did not receive outdoor exercise for a period of eight months. This Court finds Plaintiff has sufficiently stated that the deprival of outdoor exercise was a constitutional violation. For these reasons, this Court **ADOPTS** the R&R, **OVERRULES** Moving Defendants' objection to the R&R, and **DENIES** Moving Defendants' Motion to Dismiss this claim.

(Doc. 73 at 9-11.) Accordingly, the County's motion to dismiss Plaintiff's claim is

GRANTED regarding Plaintiff's claims that SDCJ caused him sleep deprivation, which

violated his constitutional rights; however, the motion is DENIED regarding the claims that SDCJ's yard time and condition violates Plaintiff's constitutional rights.

## IV. CONCLUSION

This Report and Recommendation is submitted to the Honorable Janis L. Sammartino, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c)(1)(c) of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **GRANTING IN PART** the Motion to Dismiss.

Any party may file written objections with the Court and serve a copy on all parties on or before **May 4, 2018**. The document should be captioned "Objections to Report and Recommendation." Any reply to the Objections shall be served and filed on or before **May 11, 2018**. The parties are advised that failure to file objections within the specific time may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: April 20, 2018

Hon. Peter C. Lewis
United States Magistrate Judge