UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLIOT SCOTT GRIZZLE,<br><br>                              Plaintiff,<br>vs.<br><br>COUNTY OF SAN DIEGO, et al.<br>                             Defendants. | Case No.: 17-CV-813-JLS (PCL)<br><br>**ORDER (1) ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION; (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>(ECF Nos. 64, 74) |

Presently before the Court is Magistrate Judge Peter C. Lewis's Report and Recommendation, ("R&R," ECF No. 74). Judge Lewis recommends that the Court grant in part Defendants County of San Diego and Sheriff William Gore's Motion to Dismiss, ("MTD," ECF No. 64). Defendants filed an Objection to the R&R, ("Obj.," ECF No. 75), to which Plaintiff filed a Reply, ("Reply," ECF No. 76).

Having considered the Parties' arguments and the law, as well as all supporting documents, the Court rules as follows.

/ / /

/ / /

## BACKGROUND

Judge Lewis's Report and Recommendation contains a complete and accurate recitation of the relevant portions of the factual history underlying Plaintiff's Complaint. (*See* R&R 2–4.)[1] This Order incorporates by reference the background and arguments as set forth therein.

As to the procedural history, Plaintiff filed a Complaint against thirty-one defendants: thirty individuals and the County of San Diego ("County"). All Defendants except for the County moved to dismiss the complaint, ("First MTD," ECF No. 55). Judge Lewis issued a Report and Recommendation, ("First R&R," ECF No. 63), which the Court adopted in part, ("Prior Order," ECF No. 73). The present Motion to Dismiss addresses many of the same arguments made previously.

## LEGAL STANDARD

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district court's duties regarding a magistrate judge's report and recommendation. The district court "shall make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c); *see also United States v. Raddatz*, 447 U.S. 667, 673–76 (1980). In the absence of a timely objection, however, "the Court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note (citing *Campbell v. U.S. Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974)).

## ANALYSIS

Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that Defendants violated his (1) Fourteenth Amendment right to due process, (2) Eighth Amendment right to sleep, and (3)

---

[1] Pin citations refer to the CM/ECF page number electronically stamped at the top of each page.

Eighth Amendment right to exercise.[2] ("Compl.," EFC No. 1.) Defendants move to dismiss Plaintiff's Complaint on three grounds: (1) Plaintiff's due process rights were not violated when he was placed into administrative segregation; (2) Plaintiff's Eighth Amendment rights were not violated as a result of San Diego County Jail's ("SDCJ") yard time policy for inmates housed in administrative segregation; and (3) the County of San Diego ("the County") is not a proper defendant in this case. Judge Lewis recommends this Court grant Defendants' Motion to Dismiss as to Plaintiff's Eighth Amendment claim for sleep deprivation, and deny the remainder of Defendants' Motion to Dismiss. Defendants have filed an Objection to the R&R. Therefore, this Court will review, *de novo*, those parts of the R&R to which Defendants object and will review for clear error the parts of the R&R to which the Parties do not object.

## I. Placement in Administrative Segregation

Plaintiff claims that his procedural due process rights were violated when he was placed in administrative segregation without notice of the reason for his placement, a hearing, or an opportunity to respond to the reasons for his placement. (Compl. 17.) Defendants argue, as they previously have, (*see* First MTD 4), that Plaintiff does not possess a liberty interest in being free from administrative segregation, and therefore Plaintiff fails to show a specific constitutional right that has been violated. (*See* MTD 6; R&R 11–12.)

In analyzing the present Motion to Dismiss, Judge Lewis deferred to the Court's previous order regarding the prior motion because Defendants made similar arguments as before. (*See* R&R 12; Prior Order 3–5.) Specifically, the Court found:

> Plaintiff should have received (1) an informal, nonadversary hearing within a reasonable time after being placed in administrative segregation for administrative purposes, (2) a written decision describing the reasons for

---

[2] Plaintiff brings his second and third causes of actions under the Eighth Amendment. However, as stated in the Court's Prior Order, because Plaintiff was a pretrial detainee, he is protected by the Fourteenth Amendment. (*See* Prior Order 5.) The Court analyzes Plaintiff's claims under the Fourteenth Amendment. (*See id.*)

placing him in administrative segregation, and (3) an opportunity to present his view. Plaintiff did not receive any of these recognized rights upon being placed in administrative segregation. The Court finds the denial of an informal, nonadversary hearing within a reasonable time after administrative segregation is a constitutional violation.

(Prior Order 4) (citations omitted).

Defendants do not object to Judge Lewis's recommendation regarding Plaintiff's due process allegations. The Court again finds that Plaintiff adequately alleges that his due process rights were violated and finds no clear error in Judge Lewis's recommendation. The Court **ADOPTS** the R&R and **DENIES** Defendants' Motion to Dismiss this claim.

## II. Conditions of Detention

Plaintiff argues that his Eighth Amendment right to protection from cruel and unusual punishment was violated. (Compl. 17–18.) Specifically, Plaintiff claims that he suffered from sleep deprivation and was denied yard time while detained in administrative segregation. (*Id.*) Defendants argue, as they previously have, that Plaintiff's inability to sleep and timing of his recreation do not implicate constitutional violations. (MTD 7–9.) Again in his R&R, Judge Lewis deferred to the Court's prior order. There, the Court determined that Plaintiff's sleep deprivation allegation was insufficient to implicate a constitutional violation, and Plaintiff's allegation that he was denied yard time was sufficient to implicate a constitutional violation. (*See* R&R 18–20; Prior Order 5–12.) Plaintiff does not object to Judge Lewis's recommendation regarding his sleep deprivation claim. Therefore, that finding is reviewed for clear error. Defendants object to Judge Lewis's recommendation to uphold the Court's determination that Plaintiff sufficiently alleged he was denied yard time. Therefore, the Court reviews that issue *de novo*.

### A. *Sleep Deprivation*

Plaintiff argues that he was deprived of sleep because his detention cell was constantly illuminated and loud. (Compl. 11–13, 15, 17.) Defendants argue that illumination and noise are incidental to detention, and there are adequate penological justifications for such conditions. (MTD 7.) Judge Lewis deferred to the Court's previous

finding that Plaintiff failed to allege a sufficient sleep deprivation claim because Defendants provided a penological justification for the constant illumination, and Plaintiff failed to allege the extent of sleep deprivation caused by other detainees' loud noises, or articulate how the noise was excessive. (*See* R&R 14–15; Prior Order 5–9.) Neither party objected to Judge Lewis's recommendation. The Court reaffirms its previous ruling. Thus, the Court **ADOPTS** the R&R and **GRANTS** Defendants' Motion to Dismiss this claim.

### *B. Denial of Yard Time*

Plaintiff asserts that the only scheduled recreational time for administrative segregation inmates is from 1:00 a.m. to 3:30 a.m. Plaintiff also asserts that the lights in the cells are dimmed during two blocks of time per day, one of which is also from 1:00 a.m. to 3:30 a.m. (Compl. 12.) He also asserts that he has no access to outdoor exercise. (*Id.*) Plaintiff alleges that the timing of the exercise during sleeping hours and the lack of outdoor exercise are constitutional violations. (*Id.*) Defendants argue that Plaintiff's discontent with the timing of exercise is not a valid claim and, due to SDCJ's urban setting, the lack of outdoor exercise is not a violation. (MTD 8.) Judge Lewis deferred to the Court's prior order because Defendants made similar arguments in the prior motion. (*See* R&R 15; Prior Order 9–12.) The Court previously held that Plaintiff adequately alleges constitutional violations because he claims he was forced to choose between two constitutionally protected rights—sleep and exercise, and he was not provided with outdoor exercise. (Prior Order 9–12.)

#### *1. Plaintiff's Choice Between Sleep and Exercise*

Plaintiff alleges that his constitutional rights were violated because he was forced to choose between sleep and exercise. (Compl. 15.) He argues the only time he is permitted exercise, from 1:00 a.m. to 3:30 a.m., is during one of the two blocks of time where the lights are dimmed in his cell. (*Id.*) Defendants argue, as they did previously, that the timing of Plaintiff's recreation is not a violation because Plaintiff has been allotted time to exercise even if the timing is unappealing to Plaintiff. (MTD 8.) Judge Lewis deferred to the Court's finding that Plaintiff has sufficiently alleged that there is a constitutional

5

17-CV-813-JLS (PCL)

violation because he was forced to choose between two constitutional rights. (R&R 18–19.)

Defendants object and argue Plaintiff was not forced to choose between two constitutionally protected rights. They argue Plaintiff failed to assert that he must exclusively choose between sleep and yard time because he may be able to sleep during the day when the lights are not dimmed. (Obj. 2–4.) Further, Defendants claim that because Plaintiff failed to assert that he has an exclusive choice, Defendants do not carry the burden of proving a penological justification for allegedly making Plaintiff choose between sleep and exercise. (*Id.*)

"[A]n inmate cannot be forced to sacrifice one constitutionally protected right solely because another is respected." *Allen v. City of Honolulu*, 39 F.3d 936, 938–39 (9th Cir. 1994). In *Allen*, the plaintiff "had at least six hours per week outside his cell and could choose whether to spend the time in recreation area or in the law library." *Allen*, 39 F.3d at 939. The court held the plaintiff "should not have to forego outdoor recreation to which he would otherwise be entitled simply because he exercises his clearly established constitutional right of access to the courts." *Id.*

Here, Plaintiff alleges that the only times the lights are dimmed in his cell for sleep are between 1:00 a.m. to 3:30 a.m. and 4:30 a.m. to 7:00 a.m. (Compl. 12.) He further alleges that he is only allowed to exercise between 1:00 a.m. and 3:30 a.m., the same allotted time slot as the first segment of dimmed lights for sleep. (*Id.*) Plaintiff also claims that after 7:00 a.m., "bright lights are back on, T.V. turned on very loud, and day programs started . . . until 9:45 p.m./10:45 p.m. and then starts over again." (*Id.*)

Under California law, Plaintiff must be provided a minimum of three hours of recreation time over a period of seven days. *See* CAL. CODE REGS. tit. 15, § 1065(a); *see also* Cal. Penal Code § 6030. If Plaintiff exercises only two days of the week, he would accumulate five hours of recreation time, which fulfills the minimum amount of recreation time required by law. (*See* Prior Order 5.) However, even if Plaintiff chooses to exercise only two days a week, he is forced on those days to choose exercise over sleeping with

dimmed lights. Plaintiff is entitled to confinement conditions which do not result in chronic sleep deprivation. *See Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996). Plaintiff's allegations reasonably imply that there are few opportunities for constitutionally protected sleep, other than between the 1:00 a.m. to 3:30 a.m. block, given the schedule outlined in his Complaint. (*See* Compl. 12.) The days Plaintiff foregoes sleeping with dimmed lights in order to exercise results in a total of only two and a half hours of dimmed lighting per day to sleep. As alleged, these conditions interfere with Plaintiff's entitlement to confinement conditions which do not result in chronic sleep deprivation. *See Keenan*, 83 F.3d at 1090. Thus, Plaintiff must choose between exercise and constitutionally protected sleep.

Next, Defendants argue that "the Court puts the burden on Defendants to present valid justification for the inconvenient recreation time," when "it is Plaintiff's burden to present adequate facts to support his claim." (Obj. 2–3.) Defendants are referring to the Court's prior order, where the Court stated, "what is lacking is Moving Defendants' assertion of any valid reason for scheduling the recreation time during the exact period the lights are dimmed to permit sleeping." (Prior Order 11.) As the Supreme Court has held, "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

Here, Plaintiff states sufficient allegations that his confinement conditions forced him to choose between constitutionally protected sleep and exercise. Defendants have not provided any penological justification as to how the conditions are related to a legitimate goal. The Court affirms its previous finding that Plaintiff has sufficiently stated a claim that the choice between two protected rights is a violation of his Fourteenth Amendments rights. Therefore, the Court **OVERRULES** Defendants' Objections, **ADOPTS** the R&R, and **DENIES** Defendants' Motion to Dismiss this claim.

/ / /

### 2. *Plaintiff's Lack of Outdoor Exercise*

Plaintiff claims he was denied access to outdoor exercise for eight months. (Compl. 1, 12.) He alleges that SDCJ allows detainees in administrative segregation to exercise only in a recreation yard, which is an enclosed room with no direct sunlight. (*Id.*) In their Motion to Dismiss, Defendants argue that the jail's "urban environment limits the facility from having traditional recreation yard that is completely open to the environment," and jails are only meant to house detainees for "short periods of time." (MTD 10.) Therefore, they argue the lack of outdoor exercise does not violate Plaintiff's constitutional rights. Judge Lewis deferred to the Court's prior ruling because Defendants made similar arguments as in their previous motion. (*See* R&R 14.) The Court previously held that Plaintiff stated a sufficient constitutional violation because the denial of outdoor exercise was not temporary and the urban setting was not an excuse to deprive Plaintiff of adequate outdoor exercise. (Prior Order 12.) Defendants object to Judge Lewis's ruling on the grounds that jails are different in nature than prisons, so the constitutional standards for the two are different. (Obj. 4.) Specifically, Defendants argue that jails are "only made to house prisoners temporarily," and therefore to use the same constitutional standards for prisons that "involve long term housing," would be improper. (*Id.*) Although Defendants make the same argument as before, the Court briefly addresses the issue.

In *Spain v. Procunier*, 600 F.2d 189, 200 (9th Cir. 1979), the court held that depriving inmates of outdoor recreation violates the Eighth Amendment right against cruel and unusual punishment. The *Spain* court further stated that "[t]he cost or inconvenience of providing adequate [exercise] facilities is not a defense to the imposition of cruel punishment." *Id.* In *Lopez v. Smith*, 203 F.3d 1122, 1133 (9th Cir. 2000), the court found that the prisoner sufficiently stated a constitutional violation when he was denied all outdoor exercise for a period of 45 days.

Here, it is irrelevant that, as Defendants allege, the primary distinction between jails and prisons is that the former "house prisoners temporarily." While this may be true generally, here, Plaintiff claims he was denied outdoor exercise while being detained at

SDCJ for eight months. Plaintiff's alleged harm is greater than the plaintiff's harm in *Lopez*, where the court found the deprivation of outdoor exercise of 45 days amounted to cruel and unusual punishment. *See Lopez*, 203 F.3d at 1133. Thus, the Court reaffirms its finding that Plaintiff has alleged a constitutional violation in being denied outdoor exercise for eight months. (*See* Prior Order 11–12.) Accordingly, the Court **OVERRULES** Defendants' Objection, **ADOPTS** the R&R, and **DENIES** Defendants' Motion to Dismiss this claim.

### III. The County as a Proper Defendant

The County moves to dismiss itself from the Complaint, arguing it is an improper Defendant in this action. The County argues that Plaintiff fails to point to a policy that caused his alleged harm, and that municipalities cannot be held vicariously viable for the actions of individual deputies. (MTD 4.) Judge Lewis found that Plaintiff sufficiently alleges that the County is a proper defendant. (R&R 9.) The County objects to this finding. (Obj. 5–7.) The Court reviews the County's liability *de novo*.

#### A. Legal Standard

Although municipalities are immune from § 1983 suits based on vicarious liability, municipalities may be held liable under § 1983 if the government entity subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691–92 (1978).

Generally, there are three ways in which a plaintiff can show that a municipality is liable under § 1983: the plaintiff may prove that (1) "a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity"; (2) "the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official government policy"; or (3) "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (quotation marks and citations omitted).

Only one of the three prongs must be satisfied for each cause of action for the municipality to be liable for that respective cause of action. The Court analyzes the County's liability for each of Plaintiff's causes of action.

### B. Placement in Administrative Segregation

Plaintiff sufficiently alleges that his due process rights under the Fourteenth Amendment were violated when he was placed in administrative segregation, *see supra* section I. Plaintiff argues the County is liable for the due process violations under the third *Gillette* prong because Sheriff Gore delegated the duty of investigating and correcting the alleged due process violation to an administrative sergeant. ("Opp'n," ECF No. 70, at 4.) Plaintiff states that by delegating those duties, Sheriff Gore ratified the decisions of the administrative sergeant, who was a subordinate. (*Id.*); *see* Cal. Penal Code § 831.5 ("Custodial officers of a county shall be employees of, and under the authority of, the sheriff . . . ."). Judge Lewis found that "any violation of Plaintiff's rights was ratified by Sheriff Gore once his administrative sergeant was made aware of the facts and failed to take action to cure the violation." (R&R 11.) Therefore, Judge Lewis found the County to be a proper defendant because Plaintiff sufficiently alleged facts to prove liability under the third *Gillette* prong. (*Id.*) Defendants object to Judge Lewis's finding by arguing that Sheriff Gore did not ratify any of the actions leading to the alleged violation because Plaintiff did not provide facts or allegations supporting his contention that Sheriff Gore approved any of his subordinates' actions. (Obj. 7–8.)

Under the third *Gillette* prong, a plaintiff must show that an official possessed "final policy-making authority," and "ratified a subordinate's unconstitutional decision and the basis for it." 979 F.2d at 1347.

#### 1. Final Policymaking Authority

Final policy-making authority can be established "only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). The decision maker must be "responsible for establishing final government policy respecting such activity before the

municipality can be held liable." *Id.* at 483. "Authority to make municipal policy may be granted directly by a legislative enactment . . . [and] whether an official had final policymaking authority is a question of state law." *Id.* Under California law, "the sheriff shall take charge of and be the sole and exclusive authority to keep the county jail and prisoners in it." Cal. Gov't Code § 26605. Decisions regarding the housing of prisoners falls under the sheriff's authorization. *See* Cal. Penal Code § 4000, Cal. Gov't Code §§ 26605, 26610.

Here, Plaintiff alleges that Sheriff Gore exercised his final policy-making authority by "implement[ing] . . . an official government policy" of SDCJ. (Opp'n 3–4.) Plaintiff also states that Sheriff Gore is "overall responsible for the jail and all its policies and procedures." (Compl. 3.) Given California law and Plaintiff's allegations, Plaintiff adequately shows that Sheriff Gore possesses final authority to establish municipal policy as it relates to the county jail.

### 2. *Ratification*

Under the second element of the test, ratification can be established "if a particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policymaker . . . [or] if a series of decisions by a subordinate official manifested a 'custom or usage' of which the supervisor must have been aware." *Gillette*, 979 F.2d at 1348 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988)). "[T]he unconstitutional discretionary actions of municipal employees generally are not chargeable to the municipality under section 1983." *Id.* at 1347 (citing *Praprotnik*, 485 U.S. at 126). "If the authorized policymakers retain the authority to measure the official's conduct for conformance with their policies, or if they approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Bouman v. Block*, 940 F.2d 1211, 1231 (9th Cir. 1991) (citing *Praprotnik*, 485 U.S. at 127).

Here, Plaintiff alleges he was immediately placed in administrative segregation upon arrival to SDCJ. (Compl. 11.) Plaintiff asked why he was placed in confinement, but was

denied an adequate answer. (*Id.*) Plaintiff filed multiple requests and grievances asking why he was placed in administrative segregation, but never received responses. (*Id.*) On March 30, 2017, Plaintiff wrote Sheriff Gore a letter explaining that his placement in administrative segregation violated his due process rights and that there was a lack of response to his grievances. (*Id.*) Plaintiff's letter to Sheriff Gore was sent to SDCJ administration for review. (Opp'n 12–13.) Sergeant Boorman, administrative sergeant of the SDCJ, sent Plaintiff a response letter regarding his grievances. (*Id.*) Although Sergeant Boorman addressed some of Plaintiff's concerns, he did not address Plaintiff's due process concerns relating to his placement in administrative segregation. (*See id.*) Plaintiff alleges that none of his concerns were remedied. (Compl. 17.)

Plaintiff claims that he placed Sheriff Gore on notice of the alleged due process violations with the letters and grievances he submitted, and Sheriff Gore delegated the decision-making authority to Sergeant Boorman. (*Id.*) However, Plaintiff has not alleged sufficient facts to show that Sheriff Gore expressly approved of Sergeant Boorman's response letter. Moreover, there are no facts alleged to show that Sergeant Boorman's discretion to respond to Plaintiff's grievances was a part of a series of decisions that manifested a custom or usage of which Sheriff Gore must have been aware. Plaintiff shows that Sergeant Boorman responded to Plaintiff's grievance, but does not sufficiently allege that Sheriff Gore deliberately or affirmatively ratified Sergeant Boorman's conduct. Stating that Sergeant Boorman had discretion to make decisions relating to Plaintiff's grievance is insufficient to show that Sheriff Gore approved of those decisions. *See Gillette*, 979 F.2d at 1348 (holding that plaintiff failed to establish ratification because he only proved that the policymaker did not overrule a subordinate's discretionary decision). Therefore Plaintiff has not sufficiently alleged that the County can be liable for the due process violations under the third *Gillette* prong.[3] Accordingly, the Court **SUSTAINS**

---

[3] Likewise, Plaintiff fails to allege facts to show that the County is liable for the due process violations under the first and second *Gillette* prongs. Plaintiff does not show that Sergeant Boorman's conduct was

Defendants' Objection, **REJECTS** Judge Lewis's recommendation, **GRANTS** Defendants' Motion to Dismiss, and **DISMISSES** the County as a defendant for Plaintiff's due process claim **WITHOUT PREJUDICE**.

### C. Denial of Plaintiff's Yard Time

Plaintiff sufficiently claims that his Fourteenth Amendment rights were violated when he was forced to choose between sleep and exercise and when he was deprived of outdoor exercise, *see supra* section II. Plaintiff alleges that the County is liable for these violations under the first and second *Gillette* prongs. (Compl. 11; Opp'n 3–4.)

#### *1. First* Gillette *Prong: Governmental Policy or Longstanding Practice*

Plaintiff argues the first *Gillette* prong is met because an official governmental policy or a longstanding practice caused his constitutional violations. (Compl. 11.) Specifically, Plaintiff alleges that Defendants "established and ordered" a "day program" schedule, which the jail followed for detainees in administrative segregation. (*Id.*) Defendants argue that Plaintiff has not shown there is a governmental policy or longstanding practice because "Plaintiff does not cite to any official County policy that allows for deputies to violate the Eighth or Fourteenth Amendment." (MTD 4.)

A municipality is liable for constitutional violations if a plaintiff can "prove that a city employee committed the alleged constitutional violation pursuant to formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local entity." *Gillette*, 979 F.2d at 1346 (internal quotation marks omitted) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Once a policy or practice is found, the municipality can only be held liable if it was deliberately indifferent to the plaintiff's constitutional rights. *See Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016) (en banc) (citing *City of Canton v. Harris*, 489 U.S. 378,

---

in accordance with a governmental policy or longstanding practice under the first prong. Moreover, Plaintiff alleges that Sergeant Boorman did not remedy his constitutional violation, but, Sergeant Boorman is not an official with policymaking authority. Thus, Plaintiff fails to meet the second prong.

392 (1989)). The Court first determines whether Plaintiff sufficiently alleges that there was a policy, longstanding practice or custom that led to his constitutional deprivations, and second determines whether the County was deliberately indifferent to Plaintiff's constitutional rights.

An official policy "often refers to formal rules or understanding—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently over time." *Pembaur*, 475 U.S. at 480–81. However, if a formal policy is not presented, "a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Praprotnik*, 485 U.S. at 127 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citing *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984)). "Normally, the question of whether a policy or custom exists would be a jury question." *Id.* at 920.

Here, Plaintiff alleges that the "established and ordered" schedule for detainees in administrative segregation caused him to choose between two constitutional rights, and denied him access to outdoor yard time. (*See* Compl. 11–18.) Although Plaintiff does not provide a written or formal policy, he alleges there was a longstanding practice by virtue of the implemented schedule. Plaintiff outlines in his Complaint the exact schedule that all sheriff deputies followed throughout Plaintiff's detention in administrative segregation. (*Id.* at 11–12, 17–18.)[4] A schedule that is allegedly followed by all sheriff deputies for at

---

[4] Plaintiff alleges the following schedule: From Sunday through Thursday, televisions are shut off at 9:45 p.m. (and are shut off at 10:45 p.m. on Friday and Saturday). At 11:00 p.m. all detainees walk to their cell door for a count. At 12:00 a.m. razors are passed out. At 1:00 a.m. the razors are collected. From 1:00 a.m. to 3:30 a.m., the detainees in administrative segregation are allowed to go to the recreational yard.

least an eight-month time period reasonably suggests that the schedule was well settled and not random. The Court finds that Plaintiff adequately alleges that the schedule was a custom or longstanding practice implemented by SDCJ.

Next, Plaintiff must allege sufficient facts that County acted deliberately indifferent to his constitutional rights. *See Castro*, 833 F.3d at 1076. A municipality is deliberately indifferent when a "plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission [or act] is substantially certain to result in the violation of the constitutional rights of their citizens." *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248–49 (9th Cir. 2016) (alteration in original) (internal quotations omitted) (quoting *Castro*, 833 F.3d at 1076); *see also Farmer v. Brennan*, 511 U.S. 825, 841 (1994) (holding that the deliberate indifference standard for municipalities is premised on "obviousness or constructive notice").

In *Castro*, the court found that the county's failure to comply with its own proper sobering cell standards,[5] which were outlined in the county code, was sufficient to show that it "knew of the risk of the very type of harm that befell [the plaintiff]." 833 F.3d at 1077. The county had constructive knowledge that substantial harm could occur because it had implemented, in the county code, policies to prevent the type of harm that the plaintiff experienced. Therefore, the county's failure to comply with its own polices showed deliberate indifference because "the ordinance adopted by the [c]ounty [was] a policy that explicitly acknowledge[d] the relevant substantial risks of serious harm." *Id.*

Here, the issue is whether Sheriff Gore, who was the relevant policymaker, received actual or constructive notice that the implemented schedule and practices were

---

At 3:30 a.m. detainees must walk to the cell door for another count. Around 4:00 a.m. or 4:30 a.m. breakfast is served. At 7:00 a.m. the televisions are turned back on and the day program begins. The cell lights are dimmed from 1:00 a.m. to 3:30 a.m. and 4:30 a.m. to 7:00 a.m. At all other times the lights are set to the "bright" setting. (Compl. 11–12.)

[5] "A sobering cell is generally defined as a cell with a padded floor and standard toilet with a padded partition on one side for support. It must allow for maximum visual supervision of prisoners by staff." *Castro*, 833 F.3d at 1077.

substantially certain to result in the deprivation of detainees' access to outdoor yard time and force detainees to choose between constitutionally protected sleep and exercise. Plaintiff alleges that he put Sheriff on actual notice of his concerns in his letter, and despite this, SDJC continued to follow the implemented schedule for all detainees in administrative segregation. (Compl. 11, 16, 18.) Taking Plaintiff's allegations as true, Sheriff Gore, as the relevant policymaker, had actual and constructive notice that the implemented schedule violated Plaintiff's right to outdoor yard time. *See* CAL. CODE REGS., tit. 24 § 1231.2.10 (2018) ("An outdoor exercise area or areas must be provided in every Type II and Type III facility.").[6] Like in *Castro*, where the county's failure to conform to approved ordinances constituted as deliberate indifference, Plaintiff's allegations that Sheriff Gore's failed to conform to the approved requirements suggests the County was deliberately indifferent. Similarly, Plaintiff has sufficiently alleged that Sheriff Gore knew from Plaintiff's notice, and should have known, that the implemented schedule's consequence of forcing detainees to choose between constitutionally protected sleep and exercise violated their rights. Plaintiff alleges sufficient facts that the County, through its schedule and customs derived from it, was deliberately indifferent to his constitutional rights. Plaintiff adequately alleges the County is liable for these claims.[7] Therefore, the Court **ADOPTS** Judge Lewis's recommendation, and **DENIES** Defendants' Motion to Dismiss the County as a defendant for Plaintiff's claims that he was forced to choose between two constitutional rights and denied access to outdoor exercise.

///

---

[6] Type II facility means "a local detention facility used for the detention of person pending arraignment, during trial and upon a sentence of commitment." *Minimum Standards for Local Detention Facilities*, Title 24 § 13-102(a). Plaintiff alleges that he was detained at SDCJ before trial. (Compl. 10.) Thus, it is likely that SDCJ classifies as a Type II facility.

[7] Plaintiff also argues that the County is liable for his second and third cause of action under the second *Gillette* prong. However, because Plaintiff sufficiently alleges that the County is liable for those two causes of action under the first *Gillette* prong, the Court does not analyze the causes of actions under the second prong.

16

17-CV-813-JLS (PCL)

## IV. Sheriff Gore as a Proper Defendant

Defendants previously moved to dismiss Sheriff Gore as an individual defendant. (*See* First MTD 9.) Judge Lewis found that Plaintiff did not sufficiently allege that Sheriff Gore was an affirmative participant, and therefore he was not a proper individual defendant. (*See* First R&R 14–15.) Plaintiff objected, and the Court reviewed Sheriff Gore's liability, *de novo*, and held that Sheriff Gore was a proper defendant under supervisory liability. (*See* Prior Order 13–15.) Judge Lewis did not analyze Sheriff Gore's liability in the present R&R. In Defendants' Objection to Judge Lewis's R&R, Defendants again claim that Sheriff Gore is not a proper defendant. (Obj. 8.) Defendants argue that Sheriff Gore cannot be held liable in his individual capacity, and naming him as a defendant in his official capacity is duplicative given that the County is already named. (*Id.*) Plaintiff argues that naming both Sheriff Gore and the County is not duplicative because there are separate causes of action pleaded, and Sheriff Gore may be individually held liable for the actions of his subordinates. (Reply 6.) Because the Court already discussed Sheriff Gore's liability and Defendants do not provide new arguments, the Court does not repeat that analysis here.

Although Plaintiff argues that it is not duplicative to name Sheriff Gore in both his individual and official capacity, Defendants are correct that Plaintiff does not specify whether he is naming Sheriff Gore in his individual capacity. (*See* Obj. 9.) "In many cases the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. 'The course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (quoting *Brandon v. Holt*, 469 U.S. 464, 469 (1985)). This is true here. In subsequent pleadings, Plaintiff is to specify the capacity under which he is suing Sheriff Gore. If Plaintiff makes allegations against Sheriff Gore in his official capacity and against the County, and the two are duplicative, the claims against Sheriff Gore will be dismissed. *See Rivera v. Cnty. of San Bernardino*, CV 16-795 PSG (KSx), 2017 WL 5643153, at *3 n.2 (C.D. Cal. Mar. 8, 2017) (dismissing with prejudice claims against Sheriff Gore in his

official capacity as duplicative of those against the County); *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("[I]f individuals are being sued in their official capacity as municipal officials and the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed.").

At this stage, the Court **OVERRULES** Defendants' Objection, and **DENIES** Defendants' Motion to Dismiss Sheriff Gore.

## CONCLUSION

Given the foregoing, the Court **ADOPTS IN PART** the R&R, (ECF No. 74), **GRANTS IN PART** Defendants' Motion to Dismiss, (ECF No. 64), and **DISMISSES** Plaintiff's sleep deprivation claim, and the County as a defendant for Plaintiff's due process claim **WITHOUT PREJUDICE**. The Court **DENIES** Defendants' Motion to Dismiss Plaintiff's claims regarding the choice between sleep and exercise, the denial of outdoor yard time, the placement in administrative segregation, and the naming of the County as a proper defendant for all other claims not dismissed. In its prior order, the Court dismissed without prejudice Defendants Brewer, Camalleri, Cole, Davida, M. Ellsworth, Epps, Froisted, Hepler, Huerta, Johns, LoveLace, LoveLace, McKemmy, Mondragon, Moon, Navarro, Newlander, Oliver, Olsen, Sims, Warren, and White. (Prior Order 16.)

If Plaintiff wishes to re-allege his sleep deprivation claim that has been dismissed without prejudice or re-allege claims against the dismissed Defendants, Plaintiff **MAY FILE** an amended complaint on or before September 5, 2018. Plaintiff is cautioned that should he choose to file a First Amended Complaint, it must be complete by itself, comply with Federal Rule of Civil Procedure 8(a), and that any claim, against any and all defendant not re-alleged will be considered

///

///

///

waived. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled"). If Plaintiff chooses not to file a First Amended Complaint by September 5, 2018, the case will proceed on Plaintiff's remaining claims.

**IT IS SO ORDERED.**

Dated: August 3, 2018

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge