1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 ELLIOT SCOTT GRIZZLE,

        Case No.: 3:17-cv-00813-JLS-RBM

12         Plaintiff,

**REPORT AND RECOMMENDATION**

13 v.

**OF U.S. MAGISTRATE JUDGE RE:**
**DEFENDANTS' MOTION TO**

14 COUNTY OF SAN DIEGO et al.,

**DISMISS SECOND AMENDED**

15         Defendants.

**COMPLAINT [Doc. 93.]**

16

17

18 ### I. INTRODUCTION

19     The County of San Diego, Sheriff William Gore, Lieutenant Lena Lovelace, and

20 Lieutenant Eric Froistad (collectively, "Moving Defendants") have filed a Motion to

21 Dismiss the Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of

22 Civil Procedure. (Doc. 93.) The matter was referred to the undersigned Judge for Report

23 and Recommendation Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule

24 72.1(c)(1)(d). After a thorough review of the pleadings, supporting documents, and

25 previous orders of the Court in this case, this Court respectfully recommends the Motion

26 be **GRANTED IN PART**.

27 / / /

28 / / /

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]

On August 3, 2016, Plaintiff was taken into the custody of the San Diego County Sheriff's Department. (Doc. 88, at 7.) While awaiting trial from August 3, 2016 through August 27, 2017,[2] he was placed into the administrative segregation housing unit ("Ad-Seg") in the San Diego Central Jail ("SDCJ")[3]. (Doc. 88, at 7-8.) When Plaintiff asked why he was placed in Ad-Seg, he did not receive a reason; instead, he was told to contact "classification." (*Id.*, at 7.) The next day, Plaintiff filed an inmate grievance form addressed to "classification." (*Id.*) He sought: (1) the reason for his placement in Ad-Seg; (2) an opportunity to be heard by the "critical decision maker"; (3) a hearing to contest his placement in Ad-Seg; (4) an immediate release; and (5) if not immediately released, periodic reviews of his Ad-Seg status. (*Id.*) Plaintiff gave the inmate grievance form to an unnamed deputy, but received no response. (*Id.*)

During his time in Ad-Seg, Plaintiff was required to live by a daily routine (*Id.,* at 8):

- At 3:30 a.m., Ad-Seg inmates were woken up for the morning count. (*Id.*, at 8-9.)
- At 4:30 a.m., the inmates were given breakfast. (*Id.*, at 9.)
- At 7:00 a.m., the lights were turned on to a bright setting and a television in the "dayroom" was turned on with the volume at a high level. (*Id.*, at 9.)
- Throughout the day, inmates in the unit were rotated from their cells to the dayroom in 50-minute increments. (*Id.*)
- Sheriff's deputies conducted hourly security walks punctuated by the opening and

---

[1] The following facts are taken from Plaintiff's Second Amended Complaint (Doc. 88) and are accepted as true for the purpose of this motion. *See Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (In ruling on a motion to dismiss, the court must "accept all material allegations of fact as true").

[2] Plaintiff refers to both "administrative segregation" and "solitary confinement." For continuity with the relevant authority and prior orders of this Court, this type of incarceration will be referred to as administrative segregation, or "Ad-Seg."

[3] The parties sometimes refer to the San Diego Central Jail as "county jail," or "San Diego County Central Jail." The Court will refer to the San Diego Central Jail as SDCJ for clarity and consistency.

closing of large fire doors, which created loud noises. (*Id.*, at 8-10.)

- The pattern of dayroom rotation and security checks continued all day, until the television was turned off between 9:45 p.m. and 10:30 p.m. during the week and between 10:45 p.m. and 11:45 p.m. on weekends. (*Id.*, at 8.)

- At 11:00 p.m., sheriff's deputies conducted a "count" of the Ad-Seg unit, which required Plaintiff to leave his bed, walk to the door, and show the deputy his wristband. (*Id.*, at 8-10.)

- Between 11:00 p.m. and 3:30 a.m., Plaintiff was allowed access to the recreational yard. (*Id.*, at 8.)

- At 12:00 a.m., guards distributed razors to the inmates by passing them through the tray slots in the cell doors, often creating a loud banging sound as the slot doors opened. (*Id.,* at 8-10.) Because inmates were not permitted to enter the recreational yard until the razors were later collected at 1:00 a.m., Plaintiff often could not access the yard until 1:30 a.m., giving him only a two-hour window for yard access. (*Id.,* at 8.)

This daily routine resulted in Plaintiff only being able to sleep for approximately five hours, consisting of two 2 ½ hour segments. (*Id.,* at 9.) However, these periods were interrupted by security checks, yard time, and loud banging noises, resulting in sleep periods of approximately one hour at a time. (*Id.*) Additionally, because yard time was in the middle of the night, Plaintiff was forced to choose between sleeping and exercising. (*Id.,* at 8.)

Plaintiff was subjected to constant illumination and noise while housed in Ad-Seg. (*Id.,* at 8-9.) Cell lighting was centrally controlled and kept at a bright setting, except between 1:00 a.m. and 3:30 a.m., and between 4:30 a.m. and 7:00 a.m., when it was lowered to a dimmer setting, still "too bright to allow a human being to sleep." (*Id.,* at 8-9.) Plaintiff's sleeping difficulties were exacerbated by the fact that Ad-Seg also housed mentally ill inmates who "constantly screamed, yelled, loudly beat and banged on the cell doors, toilets, and metal bunk beds." (*Id.,* at 9.) Together, the noise and lighting prevented

Plaintiff from sleeping, which caused him to suffer headaches, muscle aches, the inability to focus or think clearly, high levels of stress and anxiety, eye pain, high blood pressure, lowered immune system functioning, severe lethargy and fatigue, infections, impaired motor and cognitive functions, as well as "a number of other physical and psychological injuries." (*Id.*, at 10.)

During Plaintiff's first week in Ad-Seg, he filed two grievances objecting to the daily routine, his lack of sleep, his placement in Ad-Seg, and the lack of notice, hearings, or periodic reviews. (*Id.,* at 10-11.) Plaintiff gave the two grievance forms to two different unnamed floor deputies, who accepted and submitted them to the "grievance box," but would not sign them. (*Id.*, at 10-11.) Plaintiff verbally protested the conditions of his confinement and lack of due process to nearly fifty members of the jail staff, including Defendants Lovelace, Froistad, and Boorman.[4] (*Id.*, at 11-12.)

On March 30, 2017, Plaintiff filed three additional grievances, which were signed by a deputy: one grievance for his placement in solitary confinement, and two grievances for his sleep deprivation due to the policies and procedures at the SDCJ. (*Id.*, at 13.) On the same day, Plaintiff also wrote a letter to Defendant Sheriff William Gore (hereinafter, "Gore"), outlining the objections set forth in Plaintiff's prior grievances. (*Id.*, at 12-13.) By April 11, 2017, Plaintiff had not received any responses to his grievances, so he filed another grievance concerning SDCJ's failure to respond to grievances, which was signed by a deputy. (*Id.*, at 13-14.)

On April 18, 2017, Plaintiff received a reply from Boorman in response to his March 30 letter to Gore. (*Id.*, at 13-14.) In the reply, Boorman stated Plaintiff's letter was sent to SDCJ Administration, and that Plaintiff's complaints were being investigated. (*Id.*, at 21.) He further stated that: (1) the "night count" and "pre-breakfast count" were timed in

---

[4] Whereas the SAC identifies Sergeant Boorman, Lieutenant Lovelace, and Lieutenant Froistad as defendants, the parties sometimes refer to these individuals as "deputies" or "the deputy defendants." (*See* Docs. 88, 95, 96.) The Court will herein refer to these individuals as "Boorman," "Lovelace," and "Froistad," respectively.

accordance with department policies and procedures; (2) alternate times for razor distribution were being explored; (3) the SDCJ tried to discourage excess noisemaking by inmates, but it was impossible to completely silence other inmates within the facility; (4) teams would receive mandatory training on how to process grievances; and (5) although the Sheriff's Department was not intentionally depriving inmates of sleep, sometimes the procedures of the jail interfered with inmates' sleep. (*Id.*, at 21-22.) Ultimately, Plaintiff never learned the reasons why he was placed in Ad-Seg, never received a hearing, and remained in Ad-Seg for the entirety of his time at SDCJ. (Doc. 88, at 15.)

On April 24, 2017, Plaintiff, then proceeding *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983 ("section 1983") against fifty-one named defendants alleging various constitutional violations that occurred during his pretrial incarceration at the SDCJ. (Doc. 1.) After two different groups of defendants filed motions to dismiss the complaint (Docs. 55, 64), the Court partially granted the motions with leave to amend (Docs. 73, 79). Plaintiff, who had since retained an attorney, filed an amended complaint on September 5, 2018 (Doc. 82), which was met with another motion to dismiss (Doc. 83). The parties entered a joint stipulation to allow Plaintiff to file a Second Amended Complaint ("SAC") (Doc. 87), which Plaintiff filed on November 9, 2018 (Doc. 88)[5].

In his SAC, Plaintiff alleges four causes of action against the County of San Diego and against Gore, Boorman, Lovelace, Froistad, and Doe Defendants as individuals. (Doc. 88.) First, a cause of action under the Due Process Clause of the Fourteenth Amendment, alleging that Defendants failed to provide Plaintiff due process as to his placement in Ad-Seg. (*Id.,* at 15-16.) Second, a cause of action under the Eighth Amendment, alleging that the conditions of his confinement in Ad-Seg resulted in sleep deprivation, causing Plaintiff various physical injuries. (*Id.,* at 16-17.) Third, a cause of action under the Eighth Amendment, alleging that the conditions of his confinement prevented Plaintiff from

---

[5] The Court notes that Plaintiff apparently has still not served Defendant Boorman with the Summons and SAC, in violation of Rule 4(m) of the Federal Rules of Civil Procedure.

1   exercising. (*Id.,* at 17-18.) Fourth, a cause of action under the Eighth Amendment, alleging

2   that Plaintiff was forced to choose between sleep and exercise. (*Id.,* at 18-19.) Plaintiff

3   seeks monetary damages, attorney fees and costs, and injunctive and declaratory relief.

4   (*Id.,* at 19.)

5       Moving Defendants have now filed a motion to dismiss arguing that the SAC fails

6   to state a claim upon which relief can be granted. (Doc. 93.) Specifically, the County of

7   San Diego moves to dismiss the first cause of action regarding procedural due process, and

8   the second cause of action regarding conditions of confinement; Defendants Gore,

9   Lovelace, and Froistad move to be terminated as defendants to the action entirely; and all

10  Moving Defendants request the Court find as moot Plaintiff's claim for injunctive and

11  declaratory relief. (Doc. 93.)

12  ### III. APPLICABLE STANDARD

13      A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

14  Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ.

15  P. 12(b)(6); *Navarro v. Block*, 250 F. 3d 729, 932 (9th Cir. 2001). A claim may only be

16  dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support

17  of his claim which would entitle him to relief." *Id.* Although a complaint need not contain

18  detailed factual allegations, it must plead "enough facts to state a claim to relief that is

19  plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has

20  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

21  reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.

22  Iqbal,* 556 U.S. 662, 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads

23  facts that are merely consistent with a defendant's liability, it stops short of the line between

24  possibility and plausibility of entitlement to relief." *Id.*, at 678 (quoting *Twombly*, 550 U.S.

25  at 557) (internal quotations omitted).

26      "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

27  requires more than labels and conclusions, and a formulaic recitation of the elements of a

28  cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478

6

U.S. 265, 286 (1986) (alteration in original)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. "In deciding such a motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them." *Navarro v. Block*, 250 F.3d 729, 932 (9th Cir. 2001) (citing *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 338 (9th Cir. 1996)). But, "to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court may not assume that "the [plaintiff] can prove facts [he or she] has not alleged or that defendants have violated the … laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526 (1983).

## IV. THE FIRST CAUSE OF ACTION

Moving Defendants argue that the first cause of action against the County of San Diego should be dismissed because Plaintiff has failed to sufficiently allege a municipal policy that would subject the County of San Diego to liability. (Doc. 93, at 5-6.) Plaintiff responds that he has sufficiently alleged the existence of a policy, implicating the County of San Diego under various theories of municipal liability. (Doc. 95, at 2-4.) The Court finds that the first cause of action against the County of San Diego states a plausible claim on its face.

A municipality or other local government may be liable under section 1983 if the governmental body "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation; that is, when an "action pursuant to official municipal policy of some nature causes a constitutional tort." *Monell v N.Y. Dep't. of Social Servs.,* 436 U.S. 658, 691 (1978). To state a claim for municipal liability under section 1983, a plaintiff must allege facts showing a direct causal link between a municipal policy or custom and an alleged constitutional deprivation, and that the custom or policy was adhered to with "deliberate indifference to the constitutional rights of [the jail's] inhabitants. *See*

*City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 392 (1989).

## A. Constitutional Deprivation of Due Process

Due process requires that "[p]rison officials must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated" for administrative purposes. *Toussaint v. McCarthy,* 801 F.2d 1080, 1100 (9th Cir. 1986), abrogated in part on other grounds by *Sandin v. Connor,* 515 U.S. 492 (1995). In addition, "prison officials must inform the prisoner of the charges against the prisoner or their reasons for segregation" and "allow the prisoner to present his view." *Id.* The prisoner, however, is not entitled to "detailed written notice of charges, representation of counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Id.*, at 1100-01.

Here, Plaintiff alleges that when he was taken into custody of the San Diego County Sheriff's Department, he was immediately placed in Ad-Seg. (Doc. 88, at 7.) Plaintiff allegedly asked why he was being placed in Ad-Seg, but he was never given a reason. (*Id.*) Plaintiff alleges that the next day, he filed a grievance addressed to "classification" seeking the reason for his placement in Ad-Seg, an opportunity to be heard by the critical decision maker, the ability to rebut the justification for his placement, re-classification out of Ad-Seg, and periodic reviews. (*Id.*) Plaintiff alleges that approximately one week later, he submitted additional grievances, again objecting to his placement in Ad-Seg and the lack of notice, hearing, or periodic reviews. (*Id.*, at 10.) Plaintiff alleges that During his time in Ad-Seg at the SDCJ, he was never informed of the reasons for his segregation, never allowed an opportunity to present his view, and never received an informal non-adversary hearing.

This Court has previously found that Plaintiff should have received (1) an informal, nonadversary hearing within a reasonable time after being placed in administrative segregation for administrative purposes; (2) a written decision describing the reasons for placing him in administrative segregation; and (3) an opportunity to present his view. *Toussaint,* 801 F.2d at 1100. (*See* Doc. 73, Doc. 79.) The alleged failure to provide

Plaintiff with this process amounts to a constitutional violation. (*See* Doc. 73, Doc. 79.) The question becomes whether the constitutional violation can be attributed to the County of San Diego pursuant to some municipal policy which was adhered to with deliberate indifference to Plaintiff's constitutional rights.

**B. Policy or Custom Causing Injury**

A plaintiff may show the existence of a policy by establishing that a municipal employee committed the alleged constitutional violation pursuant to a formal government policy, or a longstanding practice or custom which constitutes the standard operating procedure of the local government entity. Plaintiff must allege the existence of either a formal government policy or "a widespread practice that ... is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Gillette*, 979 F.2d at 1349 (citing *Praprotnik*, 485 U.S. at 127). "[T]he custom must be so persistent and widespread that it constitutes a permanent and well-settled city policy." *Id.* Once such showing is made, a municipality may be held liable for its custom "irrespective of whether official policy-makers had actual knowledge of the practice at issue." *Navarro v. Block*, 72 F.3d at 715 (quoting *Thompson v. City of L.A*, 885 F.2d 1493, 1443-44 (9th Cir. 2005)).

Plaintiff alleges that the County of San Diego maintains an administrative segregation policy "that allows for placement in administrative segregation without notice, a hearing, an opportunity to rebut the charges, and periodic reviews, [which] was the moving force behind [P]laintiff's due process injury." (Doc. 88, at 16.) This alleged violation of due process was the policy of San Diego County and Sheriff Gore. (*Id.*) Plaintiff alleges that although he filed numerous grievances addressed to classification regarding the due process violation, several went unsigned and none were answered. (Doc. 88.) Plaintiff alleges that he verbally protested the denial of process to dozens of prison guards and received no response, except one: when a SDCJ staff member from classification told him he would not be released from Ad-Seg. (*Id.*, at 11-12, 14.) Finally, Plaintiff alleges that received no hearings, no reason for his placement in Ad-Seg, no opportunity to present his view, and no periodic review. (Doc. 88, at 7, 12, 15.)

The Court finds that Plaintiff has sufficiently stated a claim that the constitutional harm was caused by a de facto policy. Plaintiff has alleged a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law. There are no allegations that other inmates suffered the same constitutional deprivation, which would bolster the allegation that the practice is widespread. However, other alleged facts show a well-settled, widespread practice. For example, a multitude of Plaintiff's due process grievances allegedly went unanswered; and nearly fifty deputies allegedly failed to respond to Plaintiff's requests for process. And, despite being housed in Ad-Seg for more than a year, Plaintiff claims he never received the process he was due. Although generally inmates have no liberty interest in the administrative grievance process, *see Mann v. Adams,* 855 F.2d 639, 640 (9th Cir. 1988), Plaintiff was seeking an informal nonadversary hearing regarding his placement in Ad-Seg as required by the Fourteenth Amendment. *See Toussaint,* 801 F.2d 1080. In short, Plaintiff's allegation is that the County of San Diego's policy classifies inmates into Ad-Seg without any due process and fails to respond to inmate requests for due process. This alleged policy is directly linked to the constitutional deprivation, because the policy directly caused the deprivation. These allegations are sufficient to state a claim.

**C. Deliberate Indifference**

Plaintiff has sufficiently alleged the existence of a de facto municipal policy that was the moving force behind a constitutional violation. The final inquiry is whether Plaintiff sufficiently alleges that said policy was adhered to with deliberate indifference to Plaintiff's constitutional rights. *City of Canton,* 489 U.S. at 392.

Here, Plaintiff alleges that the majority of his due process grievances went unanswered and that nearly fifty deputies failed to respond to his requests for process. And, despite being housed in Ad-Seg for more than a year, Plaintiff alleges he never received the reason for his placement in Ad-Seg, a non-adversary hearing, or periodic reviews. Plaintiff's allegations of repeated failures to respond to his grievances and the lack of process afforded him are sufficient to allege that this de facto policy was widely adhered

to with deliberate indifference to Plaintiff's Fourteenth Amendment rights.

Plaintiff has sufficiently stated a claim for municipal liability as to the first cause of action for violation of his right to due process. He has alleged that a constitutional deprivation was caused by a de facto municipal policy which was adhered to with deliberate indifference to his constitutional rights. Therefore, it is respectfully recommended that the Court **DENY** Defendants' Motion as to the first cause of action regarding the Fourteenth Amendment right to due process.

## V. THE SECOND CAUSE OF ACTION

Moving Defendants argue that the second cause of action for sleep deprivation against the County of San Diego should be dismissed because Plaintiff has failed to state a constitutional claim based on his inability to sleep. (Doc. 93, at 7-8.) Plaintiff responds that the lighting and noise levels alleged in the SAC adequately state a constitutional claim. (Doc. 95, at 5-7.) As with the first cause of action, Plaintiff must allege facts showing a direct causal link between a municipal policy or custom and an alleged constitutional deprivation, and that the custom or policy was adhered to with "deliberate indifference to the constitutional rights of [the jail's] inhabitants. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 392 (1989).

### A. Constitutional Deprivation of Pretrial Rights

When a pretrial detainee challenges the conditions of his confinement, the Court must decide whether the conditions deprive the detainee's right to be free from punishment without due process under the Fourteenth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 533 (1979). Until 2016, the Ninth Circuit held that all conditions of confinement claims were analyzed using a subjective deliberate indifference standard, whether brought by a prisoner under the Eighth Amendment or a pretrial detainee under the Fourteenth Amendment. *See Clouthier v. County of Contra Costa,* 591 F.3d 1232, 1242-43 (9th Cir. 2010) (finding a single "deliberate indifference" test for plaintiffs bringing a constitutional claim under the Eighth and Fourteenth Amendments). However, in *Kingsley v. Hendrickson*, the United States Supreme Court found that a claim by a pretrial detainee challenging a governmental

action under the Fourteenth Amendment must be analyzed using an objective deliberate indifference standard. 135 S.Ct. 2466, 2475 (2015). The Ninth Circuit responded in *Castro v. County of Los Angeles* and concluded that "the test to be applied under *Kingsley* must require a pretrial detainee who asserts a due process claim for [inadequate conditions of confinement] to prove more than negligence but less than subjective intent—something akin to reckless disregard[,]" because "mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro v. City of Los Angeles,* 833 F.3d at 1070-71.

Accordingly, the Court held that the elements of a pretrial detainee's Fourteenth Amendment claim (and therefore, the allegations necessary to state a claim) are: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Id.* "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will "necessarily turn on the facts and circumstances of each particular case." *Id.,* citing *Kingsley*, 135 S.Ct. at 2473.

Here, Plaintiff has sufficiently shown a violation of his constitutional rights under the Fourteenth Amendment. Plaintiff claims that the combination of bright lights and excessive noise, which resulted in chronic sleep deprivation, caused Plaintiff serious psychological and physical injury. (Doc. 88, at 16.) Plaintiff alleges that he was subjected to constant illumination and noise while housed in Ad-Seg. (*Id*., at 8-9.) Cell lighting was allegedly kept at a bright setting for approximately nineteen hours per day, and during the remaining hours lowered to a dimmer setting "too bright to allow a human being to sleep." (*Id.,* at 8-9.) Plaintiff alleges that he was housed with mentally ill inmates who "constantly screamed, yelled, loudly beat and banged on the cell doors, toilets, and metal bunk beds."

1 (*Id.*, at 9.) Plaintiff claims that the sleep deprivation alleged in the SAC was caused by a

2 policy of Gore and the County of San Diego, and that the defendants acted with deliberate

3 indifference to Plaintiff's pain and suffering. (*Id.*, at 17.) The Ad-Seg daily routine alleged

4 in the SAC, which created the conditions of confinement complained of, was so regular

5 and organized that it was clearly the result of an intentional decision. These alleged

6 conditions of confinement put Plaintiff at substantial risk of suffering serious harm, which

7 he claims he did. Reasonable available measures were not taken to abate the risk, as shown

8 by the alleged repeated failures to address Plaintiff's grievances and complaints. Finally,

9 the claimed failure to take such measures resulted in Plaintiff's injuries. Therefore,

10 Plaintiff has sufficiently stated a constitutional violation pursuant to the Fourteenth

11 Amendment.

12 **B. Policy or Custom Causing Injury**

13 Plaintiff claims that the sleep deprivation alleged in the SAC was caused by a policy

14 of Sheriff Gore and the County of San Diego. (*Id.*, at 17.) He has set forth an hour-by-

15 hour account of daily life in Ad-Seg, alleging details of the Ad-Seg schedule that can only

16 be the result of a policy. For example, Plaintiff has alleged the times he was required to

17 wake up and go to sleep were strictly scheduled and governed by the dimming of the cell

18 lights. (*Id.*, at 8.) He has alleged that inmates in Ad-Seg were taken to the dayroom in 50-

19 minute increments. (*Id.*) He has alleged the schedule of security checks throughout the

20 day and night. (*Id.*, at 8-9.) Every aspect of life in Ad-Seg, Plaintiff claims, was closely

21 monitored and managed. It would be impossible for such an intricate system to exist

22 without some type of municipal policy, formal or otherwise, directing employees of the

23 jail. Furthermore, the Ad-Seg daily routine was causally linked to Plaintiff's sleep

24 deprivation injuries, because as a direct result of the routine, he was allegedly unable to

25 sleep for more than one hour at a time. Therefore, the Court finds that Plaintiff has shown

26 the existence of a policy that was causally linked to the constitutional injury.

27 / / /

28 / / /

### C. Deliberate Indifference

Plaintiff claims that he was treated with deliberate indifference to the pain and suffering caused by the alleged constitutional violation. (*Id.*, at 17.) He further alleges that he "put each and every defendant on notice that he was being sleep deprived and the resulting injuries, but no defendant took any action to correct the constitutional violation." (*Id.*) Additionally, for the Ad-Seg daily routine to exist, jail employees must have strictly adhered to municipal policies and practices. The allegation of this widespread adherence, combined with the allegation that Plaintiff continuously and vociferously objected to the conditions of his confinement, sufficiently state a claim of deliberate indifference to the constitutional violation that was occurring.

Plaintiff has sufficiently alleged that a constitutional violation occurred because the conditions of his confinement in Ad-Seg violated the Fourteenth Amendment, a municipal policy existed which was causally linked to the constitutional violation, and the policy was adhered to with deliberate indifference to his constitutional rights. Therefore, Plaintiff has successfully stated a claim with respect to the second cause of action. Accordingly, it is respectfully recommended that the Court **DENY** Defendants' Motion as to the second cause of action for sleep deprivation.

### VI. CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

Froistad argues that he should be terminated as a defendant to the entire SAC. (Doc. 93, at 10-11.) Lovelace argues that she should be terminated as a defendant to the second cause of action for sleep deprivation, the third cause of action for denial of yard time, and the fourth cause of action for the choice between sleep and exercise. (*Id.*) Gore argues that he should be terminated as a defendant entirely. (Doc. 93, at 8-10.) Plaintiff responds that each of these individual defendants are responsible under a theory of supervisory

/ / /

/ / /

/ / /

/ / /

liability.[6] (Doc. 95, at 7-9.) The Court finds that the SAC fails to state a claim against Froistad as to the entire SAC; against Lovelace as to the second, third, and fourth causes of action; and against Gore as to the first cause of action.

"Liability under section 1983 arises only upon a showing of personal participation by the defendant. *Taylor v. List*, 880 F. 2d 1040, 1045 (9th Cir. 1989). In general, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (emphasis in original). However, a supervisor may be held liable under section 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citing *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987).

"[A]cquiesence or culpable indifference may suffice to show that a supervisor personally played a role in the alleged constitutional violations." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011). In other words, "[a] supervisor is…liable for constitutional violations of his subordinates if the supervisor…knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d at 1045. "The requisite causal connection can be established ... by setting in motion a series of acts by others," or by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr v. Baca*, 652 F.3d at 1207-08. Supervisory liability may also exist "even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional

---

[6] Moving Defendants refer to Froistad and Lovelace as "Deputy Defendants" and analyze their liability solely on an individual basis. (Doc. 93, at 10-11.) However, Plaintiff clarifies that the allegations against Froistad and Lovelace are premised on a theory of supervisory liability, rather than individual liability. (Doc. 95, at 9.) Further, both parties' arguments as to Sheriff Gore are based on supervisory liability. Therefore, the Court will analyze the claims against Froistad, Lovelace, and Gore under a theory of supervisory liability.

3:17-cv-00813-JLS-RBM

violation." *Hansen v. Black*, 885 F.2d at 646.

**A. Froistad**

The allegations against Froistad in his individual capacity are insufficient to state a claim of supervisory liability under section 1983 as to the entire SAC. Plaintiff claims Froistad was employed as a peace officer by the San Diego County Sheriff's Department as an acting watch commander in the SDCJ. (*Id.*, at 5.) He alleges that Froistad knew about Plaintiff's pro per status against the County and did nothing to correct Plaintiff's constitutional injuries. (*Id.*) Finally, Plaintiff claims he personally put Froistad on notice of the constitutional deprivations he suffered. (Doc. 88, at 15-19.) These allegations are insufficient to state a claim for supervisory liability: Plaintiff merely recites the elements of a cause of action without underlying factual support. The SAC does not sufficiently allege Froistad's personal participation in, causal connection to, or culpable indifference to, Plaintiff's constitutional injuries. Therefore, Plaintiff fails to state a claim against Froistad as to the entire SAC.

**B. Lovelace**

The allegations against Lovelace in her individual capacity are insufficient to support a claim of supervisory liability under section 1983 as to the second, third, and fourth causes of action. Plaintiff claims Lovelace was employed as a peace officer by the San Diego Sheriff's Department in the "classification" section of the SDCJ. (Doc. 88, at 4.) Plaintiff alleges that he personally spoke to Lovelace about the matters alleged in the SAC. (*Id.*, at 11, 12.) Finally, Plaintiff alleges that Lovelace conducted Plaintiff's initial classification evaluation and determined that he should be placed in Ad-Seg but did not serve him with an order of segregated housing "per the County policy on administrative segregation." (*Id.*, at 15.) These allegations support Lovelace's liability only as to the first cause of action. But the second, third, and fourth causes of action as alleged against Lovelace are supported only by the allegation that Plaintiff informed Lovelace about the matters as alleged in the SAC (Doc. 88, at 11). Plaintiff has failed to allege how Lovelace personally participated in, is causally linked to, or acted with culpable indifference to, the

constitutional deprivations alleged in the second, third, and fourth causes of action. Therefore, Plaintiff fails to state a claim against Lovelace as to the second, third, and fourth causes of action.

### C. Gore

The allegations against Gore in his individual capacity are insufficient to state a claim of supervisory liability under section 1983 as to the first cause of action, but Plaintiff has stated a claim of supervisory liability as to the second, third, and fourth causes of action. Plaintiff has failed to allege facts supporting Gore's personal participation in any of the constitutional violations alleged in the SAC. Plaintiff makes general allegations that Gore was the final policy maker with respect to the matters in the SAC (Doc. 88, at 3) and that the constitutional violations were the result of policies of the County of San Diego and Gore (Doc. 8, at 15-18). But the SAC does not sufficiently allege that Sheriff Gore himself was personally involved in depriving Plaintiff of his constitutional rights. Plaintiff has also failed to allege a sufficient causal connection between Sheriff Gore's individual wrongful conduct, if any, and the constitutional violations Plaintiff suffered. Plaintiff's SAC depends on general allegations of policy, procedure, and practice to claim constitutional violations. These allegations are insufficient to establish personal participation.

Furthermore, Plaintiff has failed to plausibly allege that Gore acquiesced, or was culpably indifferent to, Plaintiff's constitutional deprivations. Plaintiff claims that Gore had knowledge of the constitutional violations because of the letter Plaintiff sent to him on March 30, 2017. (Doc. 88, at 12-13.) However, sending a letter to Gore does not establish personal knowledge. And, although Gore arguably had constructive knowledge, this fact is contradicted by other allegations in the SAC. The contents of Boorman's reply indicate that Gore never even received the letter; it specifically states that "San Diego Jail Administration was sent the letter ... to review and reply to," not Gore. (*Id.,* at 21.) Although the SAC contains conclusory allegations that Gore failed to address the constitutional deprivations despite knowledge of them, these conclusory allegations are insufficient to show acquiescence.

However, Plaintiff has stated a claim of supervisory liability as to Gore with respect to the second, third, and fourth causes of action on the basis that Gore enacted a constitutionally deficient policy which was the moving force behind the violation. Whereas municipal liability can be established by showing the existence of a de facto policy, personal liability requires the individually-named defendant to have "implemented" a policy. *See Hansen v. Black,* 885 F.2d at 646. Plaintiff has sufficiently alleged that the Ad-Seg daily routine, which caused the constitutional violations pleaded in the second, third and fourth causes of action relating to sleep deprivation, exercise, and the choice between sleep and exercise, was an official "policy" that lead to the constitutional violations. Plaintiff has specifically alleged that the daily routine in Ad-Seg was the policy of the County of San Diego and Sheriff Gore. (Doc. 88, at 7.) Further, the alleged routine was a daily occurrence that restricted every inmate in Ad-Seg. (*Id.*, at 7-8.) The routine was allegedly in effect for the duration of Plaintiff's housing in Ad-Seg, a period of more than a year. (*Id.*, at 8.) And, Plaintiff claims that the routine caused three constitutional violations: sleep deprivation, denial of exercise, and a forced choice between sleep and exercise. (Doc. 88, at 8, 17-18.) These alleged deprivations fall below the minimum standard of care in pretrial detention cases. *See Gordon v. County of Orange,* 888 F.3d at 1122. Furthermore, this alleged policy was the moving force behind the constitutional violations, because Plaintiff suffered the claimed constitutional injuries as a direct result of the policy. Plaintiff has sufficiently alleged that the Ad-Seg routine implemented by Sheriff Gore, as it relates to the second, third and fourth causes of action, is a policy so constitutionally deficient that the policy itself is a repudiation of the Constitution and the moving force behind the violation. (Doc. 88, at 3.) *See Hansen v. Black*, 885 F. 2d at 646 (*see also* Doc. 73.) Therefore, Plaintiff has stated a claim against Gore under the theory of supervisory liability as to the second, third, and fourth causes of action.

With respect to the individual defendants, it is respectfully recommended that the Court **GRANT IN PART** Defendants' Motion as follows: (1) **terminate** Froistad as a defendant to the entire SAC; (2) **terminate** Lovelace as a defendant to the second, third,

and fourth causes of action; and (3) **terminate** Gore as a defendant to the first cause of action.

## VII. INJUNCTIVE AND DECLARATORY RELIEF

Moving Defendants argue that Plaintiff is not entitled to declaratory or injunctive relief because he is no longer exposed to the policies being challenged in the SAC. (Doc. 93, at 11.) Plaintiff argues that there is nothing to show that the policies have ceased, therefore constitutional violations are still occurring. (Doc. 95, at 10.) The Court finds Plaintiff's claims for injunctive and declaratory relief are moot because Plaintiff is no longer subject to the conditions and policies challenged in the SAC.

Article III of the United States Constitution "restricts federal courts to the resolution of cases and controversies," *David v. Fed. Election Comm'n,* 554 U.S. 724, 732 (2008), and requires that "a justiciable case or controversy … remain extant at all stages of review," *United States v. Juvenile Male,* 564 U.S. 932, 936 (2011) (internal quotation marks omitted). "[W]hen the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome[,]" the claim is moot, and a federal court no longer has jurisdiction. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (internal quotation marks omitted).

"An inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies[.]" *Dilley v. Gunn,* 64 F.3d 1365, 1368 (9th Cir. 1995). The same is true for claims seeking declaratory relief, because the released inmate is no longer subject to the prison conditions or policies he challenges. *Alvarez v. Hill,* 667 F.3d 1061, 1064 (9th Cir. 2012) (citing *Rhodes v. Stewart,* 488 U.S. 1, 2-4 (1998). "Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, … [a]ny declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted. And the … inmate has no further need for such declaratory or injunctive relief, for he is free of the policy or practice that provoked his lawsuit in the first place." *Id.* (citations omitted). An exception to the

mootness doctrine exists for claims that are capable of repetition, yet evade review. But, the exception "is limited to extraordinary cases in which (1) the duration of the challenged action is too short to be fully litigated before it ceases, and (2) there is a reasonable expectation that the plaintiff will be subjected to the same action again. *Alvarez v. Hill*, 667 F.3d at 1064.

Here, Plaintiff's prayer for declaratory and injunctive relief is moot. This lawsuit was filed against the County of San Diego and several of its employees for violations of Plaintiff's constitutional rights "as a pretrial detainee from August 3, 2016 through August 27, 2017." Although the original complaint was filed on April 24, 2017, the operative SAC was filed on November 9, 2018. (*See* Doc. 1, Doc. 88.) Additionally, Plaintiff submitted a notice of change of address on October 13, 2017, which indicated that he was no longer incarcerated at the SDCJ, but had been relocated to the California Institute for Men in Chino, California. (*See* Doc. 61.) Thus, at the time the superseding Second Amended Complaint was filed, Plaintiff was removed from the environment in which he was subjected to the policies and practices alleged in the SAC. As to Plaintiff's request for declaratory and injunctive relief, the issues presented are no longer live, and Plaintiff lacks a legally cognizable interest in the outcome. Therefore, Plaintiff's prayer for declaratory and injunctive relief is moot.

Furthermore, the mootness exception for claims that are capable of repetition yet evade review does not apply. Although the duration of the actions challenged was too short to be fully litigated before they ceased, Plaintiff cannot have a reasonable expectation that he will be subjected to the same action again. Plaintiff's claims arise out of the time that he was a pretrial detainee being housed in the SDCJ, from August 3, 2016, to August 27, 2017. He was allegedly subjected to the policies and procedures of the SDCJ during a set time period that has now elapsed. Plaintiff is now housed in a California state prison in Chino, which means he is now serving a sentence, not awaiting trial. There is no reason for Plaintiff to be relocated to the SDCJ pending trial because his case has already been adjudicated. And, because he will not be relocated to the SDCJ pending a trial, he will not

be subjected to the same policies and procedures that caused the constitutional violations alleged in the SAC.

Plaintiff also argues that the claims are capable of repetition yet evade review because other inmates may be exposed to the allegedly unconstitutional policies at SDCJ. (Doc. 95, at 10.) However, other inmates have the ability to bring lawsuits challenging the policies, and this lawsuit has not been certified as a class action. *See Dilley v. Gunn,* 64 F.3d 1365, 1368 (9th Cir.1995). Thus, the mootness exception for claims that are capable of repetition yet evade review does not apply. Accordingly, it is respectfully recommended that the Court **GRANT** the Motion as to the claims seeking injunctive and declaratory relief.

## VIII. LEAVE TO AMEND

As a general rule, courts freely grant leave to amend a complaint which has been dismissed. Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). "Leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). It "should be granted 'if it appears at all possible that the plaintiff can correct the defect.'" *Id.* (quoting *Breier v. N. Cal. Bowling Proprietors' Ass'n,* 316 F.2d 787, 789-90 (9th Cir. 1963)). However, "the Ninth Circuit has recognized that plaintiffs do not enjoy unlimited opportunities to amend their complaints." *Stone v. Conrad Preby's,* 2013 WL 139939, at *2 (S.D. Cal. Jan.10, 2013) (citing *McHenry v. Renne,* 84 F.3d 1172, 1174 (9th Cir. 1996)). *See also Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000) ("[A] district court should grant leave to amend ... unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

Here, leave to amend should be denied despite the liberal policy in favor thereof. Throughout this litigation, the various motions brought by defendants have attacked Plaintiff's pleadings on different grounds; after each dismissal, Plaintiff has accordingly amended his pleadings to conform with the Court's instructions. But, Plaintiff's statement of facts has generally remained unchanged. As to the individual defendants analyzed herein, further leave to amend would be futile. To state claims against Froistad and

Lovelace, Plaintiff is required to show personal involvement, a causal connection, culpable indifference, or the implementation of a constitutionally deficient policy: these are the essential elements of the claims alleged in the SAC. But in the third iteration of his pleading, Plaintiff fails to allege facts supporting any of these elements. As to Gore, Plaintiff has stated a claim for supervisory liability as to the second, third, and fourth causes of action. Plaintiff succeeded in doing so because the SAC is based almost entirely on allegations of policy, practice, and procedure, developed and formulated by Gore. These same allegations do not support Gore's liability as to the first cause of action. To invite Plaintiff to amend again to show Gore's personal participation—when the SAC is based on policy—would be to welcome amendments that directly contradict and undermine other allegations in the SAC. Therefore, amending the SAC as to Gore would be futile.

Therefore, with respect to the termination of Froistad as to the entire SAC, Lovelace as to the second, third, and fourth causes of action, and Gore as to the first cause of action, the Court respectfully recommends that leave to amend be **DENIED**.

## IX. CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Janice L. Sammartino under 28 U.S.C. § 636(b)(1)(B) and Rule 72.1(c)(1)(d) of the Local Civil Rules of the United States District Court for the Southern District of California. For the reasons set forth above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order approving and adopting this Report and Recommendation, and directing that Judgment be entered **GRANTING, IN PART**, the Motion to Dismiss. Specifically, it is recommended that the Court: (1) **allow** all causes of action to proceed against the County of San Diego; (2) direct the Clerk of Court to **terminate** Froistad as a defendant as to the action; (3) **dismiss** Lovelace as a defendant as to the second, third, and fourth causes of action without leave to amend, but **allow** the first cause of action to proceed as against Lovelace in her individual capacity; (4) **dismiss** Gore as a defendant to the first cause of action without leave to amend, but **allow** the second, third, and fourth causes of action to proceed as against Gore in his individual capacity; (5) **find** that Plaintiff's claim for

injucnctive and declaratory relief is **moot**; (6) direct the Clerk of Court to **terminate** Boorman as a defendant pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

**IT IS FURTHER RECOMMENDED** that the Court order: (a) The County of San Diego to file an Answer to every cause of action in the SAC; (b) Gore to file an Answer to the second, third, and fourth causes of action in the SAC; and (c) Lovelace to file an Answer to the first cause of action in the SAC.

**IT IS ORDERED** that no later than **April 7, 2019**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **May 7, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATE: March 7, 2019

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE

3:17-cv-00813-JLS-RBM