# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLIOT SCOTT GRIZZLE,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 3:17-cv-00813-JLS-RBM<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE RE: MOTION TO DISMISS SECOND AMENDED COMPLAINT BY DEFENDANT AARON BOORMAN**<br><br>**[Doc. 98.]** |

## I. INTRODUCTION

Defendant Aaron Boorman ("Boorman") has filed a Motion to Dismiss the Second Amended Complaint (the "Motion") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 93.) The matter was referred to the undersigned Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Civil Local Rule 72.1(c)(1)(d). After a thorough review of the pleadings, supporting documents, and previous orders of the Court in this case, this Court respectfully recommends the Motion be **GRANTED**.

///
///
///

1

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]

Plaintiff alleges he was placed in the administrative segregation housing unit ("Ad-Seg") of the San Diego Central Jail ("SDCJ") while awaiting trial from August 3, 2016, through August 27, 2017. (Doc. 88, at 7-8.) During this period, Plaintiff claims the defendants failed to notify him of the reasons for his placement in Ad-Seg, give him a hearing, or periodically review his placement. (Doc. 88, at 12.) While in Ad-Seg, Plaintiff was allegedly subjected to various conditions of confinement that fell below constitutional standards, including: a daily routine involving multiple security checks; constant illumination; constant noise; interrupted sleep; a choice between sleep and exercise; and the eventual denial of exercise altogether. (*Id.*, at 8-10.) These conditions prevented Plaintiff from sleeping, which caused headaches, muscle aches, the inability to focus or think clearly, stress and anxiety, eye pain, high blood pressure, lowered immune system functioning, severe lethargy and fatigue, infections, impaired motor and cognitive functions, and "a number of other physical and psychological injuries." (*Id.*, at 10.)

Plaintiff claims he protested the conditions of his confinement to several members of SDCJ staff including Boorman. (*Id.*, at 11-12.) Plaintiff allegedly filed several grievances regarding the conditions and lack of due process, but never received a response. (*Id.*, at 7-13.)

On March 30, 2017, Plaintiff allegedly sent a letter to defendant Sheriff William Gore protesting the conditions of confinement in Ad-Seg and the defendants' failure to provide him with adequate process. (*Id.*, at 12-13.) On April 18, 2017, Boorman replied in writing that Plaintiff's letter was sent to San Diego Central Jail Administration and that Plaintiff's complaints were being investigated. (*Id.*, at 13-14, 21.) In response to Plaintiff's specific complaints about security checks, noise, and grievance-handling, Boorman wrote: (1) the various security checks were timed in accordance with department policies and

---

[1] Because the Court has already set forth Plaintiff's allegations with respect to each cause of action and the other named defendants, the Court will only include allegations pertinent to Boorman's liability.

procedures; (2) the department was exploring alternate times to distribute hygiene products; (3) it was impossible to completely silence other inmates within the facility despite SDCJ's efforts to discourage excess noisemaking by inmates; (4) teams would receive mandatory training on grievance processing; and (5) although the Sheriff's Department did not intentionally deprive inmates of sleep, sometimes SDCJ procedures interfered with inmates' sleep. (*Id.*, at 21-22.) Despite Plaintiff's efforts, he allegedly never received a hearing, a written decision describing the reasons for his placement in Ad-Seg, or an opportunity to present his view. (*See id.*, at 7-22.)

On April 24, 2017, Plaintiff, then proceeding *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") against the County of San Diego and numerous employees of the San Diego County Sheriff's Office. (Doc. 1.) The Court partially granted two separate motions to dismiss and granted Plaintiff leave to amend his pleading. (Docs. 73, 79.) Plaintiff, who had since retained an attorney, filed an amended complaint on September 5, 2018 (Doc. 82), which asserted claims against Boorman for the first time, and which was met with another motion to dismiss (Doc. 83). On November 9, 2018, Plaintiff filed his Second Amended Complaint ("SAC") (Doc. 88) pursuant to a joint stipulation (Doc. 89). The SAC contains four causes of action: first, a violation of the Fourteenth Amendment Due Process Clause for Plaintiff's placement in Ad-Seg without due process; second, a violation of the Eighth Amendment for conditions of confinement that caused him physical injury; third, a violation of the Eighth Amendment for conditions of confinement that prevented him from exercising; and fourth, a violation of the Eighth Amendment for being forced to choose between sleep and exercise. (*Id.*, at 15-19.)

The County of San Diego, Sheriff William Gore, Lieutenant Lena Lovelace, and Lieutenant Eric Froistad collectively filed a motion to dismiss the SAC on November 30, 2018. (Doc. 93.) At the time, Boorman had not been served. On March 7, 2019, the undersigned issued a Report and Recommendation regarding that motion, and recommending Boorman's dismissal because he still had not been served. (Doc. 97.) On March 11, 2019, Plaintiff's counsel requested that Defense counsel accept service on

3

Boorman's behalf; Defense counsel agreed, provided Boorman's argument in favor of the Court's recommendation to dismiss him as a defendant for lack of service be preserved.[2] (Doc. 98-1, fn. 1; *see* Doc. 104, Ex. B.)

Boorman has filed a 12(b)(6) Motion to Dismiss and argues Plaintiff failed to establish Boorman's individual liability as to any of the causes of action in the SAC. (Doc. 98-1.)

### III. MOTION TO DISMISS STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 932 (9th Cir. 2001). A claim may only be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* Although a complaint need not contain detailed factual allegations, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, ("*Iqbal*") (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*, at 678, (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

///

---

[2] The undersigned recommended that Boorman be dismissed for lack of service (Doc. 97) and the parties briefed the issue in their respective objections and replies to the Court's Report and Recommendation (*see* Docs. 99, 100, 101, 102). Although the parties raise the issue again in their moving papers (*see* Docs. 98-1, 104, 105), the issue is already pending before United States District Judge Janis L. Sammartino, and a second recommendation by the undersigned on the same issue would be inappropriate. In any case, dismissal of Boorman pursuant to Rule 4(m) now appears moot, both in light of his having been served and the undersigned's recommendation to dismiss Plaintiff's claims against him pursuant to Fed. R. Civ. P. 12(b)(6).

4

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. "In deciding such a motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them." *Navarro*, 250 F.3d at 932 (citing *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 338 (9th Cir. 1996)). But, "to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court may not assume that "the [plaintiff] can prove facts [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In reviewing the sufficiency of a complaint, the Court is limited to the complaint itself and its attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights. Ltd.*, 551 U.S. 308, 322-23 (2007); *In re NVIDIA Corp. Securities Litigation*, 768 F.3d 1046, 1051 (9th Cir. 2014).

## IV. DISCUSSION

Section 1983 is a "vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). To state a claim under Section 1983, a plaintiff must allege that a right secured by the Constitution or laws of the United States was violated and that the alleged violation was committed by a person acting under color of state law. *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015).

There is no *respondeat superior* liability under Section 1983. *Id.* *See also Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Instead, "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). However, a supervisor may be held individually liable under Section 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr*, 652 F.3d at 1207; *see also Redman v. County of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991)). "A supervisor can be liable in his individual capacity . . . for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998); *see also Taylor v. List*, 880 F.2d at 1045 ("A supervisor is . . . liable for constitutional violations of his subordinates if the supervisor . . . knew of the violations and failed to act to prevent them."). "Acquiescence or culpable indifference may suffice to show that a supervisor personally played a role in the alleged constitutional violations." *Starr*, 652 F.3d at 1208 (internal quotation marks and citations omitted).

### A. Procedural Due Process Claim

Plaintiff claims his placement in Ad-Seg without due process violated his Fourteenth Amendment rights. (Doc. 88, at 15-16.) Boorman argues Plaintiff has failed to state a claim against him because he is sued based on his alleged role as a supervisor. (Doc. 98-1, at 2-3.) Plaintiff responds that Boorman personally participated in the violation, and that he is therefore individually liable. (*See* Doc. 104, 3-7.)

Pretrial detainees have a right to procedural due process before they are subjected to more severe conditions of confinement than other detainees. *Shorter v. Baca*, 895 F.3d 1176, 1190 (9th Cir. 2018). Due process requires that "[p]rison officials must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated" for administrative purposes. *Moreno v. Terhune*, 84 Fed.Appx. 818, 820 (9th Cir. 2003)

6

(citing *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986)); *see also Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002); *Shorter v. Baca*, 895 F.3d 1176, 1190 (9th Cir. 2018); *Demery v. Arpaio*, 378 G.3d 1020, 1030 (9th Cir. 2004). In addition, "prison officials must inform the prisoner of the charges against the prisoner or their reasons for segregation" and "allow the prisoner to present his view." *Id.* The prisoner, however, is not entitled to "detailed written notice of charges, representation of counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Id.*, at 1100-01.

Plaintiff alleges that Defendants violated his Fourteenth Amendment right to procedural due process when they placed him in Ad-Seg at SDCJ without informing him of the reason, giving him a hearing or any opportunity to rebut the charges, or periodically reviewing his placement in Ad-Seg. (Doc. 88, at 15.) Plaintiff claims that the "moving force" behind the Fourteenth Amendment violation that places inmates in in Ad-Seg without notice, a hearing, an opportunity to rebut the charges, or periodic reviews. (*Id.*) Plaintiff alleges that Lieutenant Lovelace ordered his placement in Ad-Seg but failed to serve him with an order of segregated housing. (*Id.*) Plaintiff alleges he notified Boorman of the due process violation via a letter attached to the SAC. (*See Id.*, at 13, 15, 22-23.) Despite putting the defendants on notice of his grievances, Plaintiff claims the defendants failed to correct the constitutional violations. (Doc. 88, at 16.)

This Court has found that Plaintiff should have received an informal, nonadversary hearing within a reasonable time after being placed in Ad-Seg for administrative purposes, a written decision describing the reasons for placing him in Ad-Seg, and an opportunity to present his view. *Moreno v. Terhune*, 84 Fed.Appx. at 820. (*See* Docs. 73, 79, 97.) The failure to provide Plaintiff with this process amounts to a constitutional violation. (*See* Docs. 73, 79, 97.) This Court has also found that Plaintiff has sufficiently alleged a Fourteenth Amendment violation in connection with his placement in Ad-Seg. (*See* Doc. 97.)

///

However, the SAC fails to state a claim of individual liability as to Boorman. While Plaintiff alleges that Boorman was employed as a peace officer by the San Diego County Sheriff's Office, he fails to allege that Boorman acted in a supervisory capacity. (*See* Doc. 88, at 3-4, 15-16.) Nor does Plaintiff allege that Boorman was personally involved in the Fourteenth Amendment violation claimed in the SAC. Plaintiff claims a Fourteenth Amendment violation based on his placement in Ad-Seg without notice, an opportunity to rebut the charges, or periodic reviews of his placement. (*Id.*, at 15.) Plaintiff alleges facts attributing this violation to a County policy implemented by Sheriff Gore and the individual actions of Lieutenant Lovelace—not to Boorman. (*See* Doc. 88, at 15-16.)

Additionally, Plaintiff fails to state a claim that Boorman acquiesced in the deprivation of, or showed culpable indifference to, his Fourteenth Amendment rights. *Starr*, 652 F.3d at 1208. Plaintiff claims Boorman was on notice of the constitutional violations merely because he responded to a letter intended for Sheriff Gore, which outlined the violations. (*See id.*, at 12-15.) But the letter does not contain any information about Plaintiff's placement in Ad-Seg without due process; rather, it contains information about various deputies' failure to respond to grievances and the conditions of Plaintiff's confinement. (*See id.*, at 21-22.) Similarly, Boorman's response does not indicate he had knowledge of Plaintiff's Ad-Seg placement without the required process: it only responds to Plaintiff's complaints about grievances and conditions of confinement in Ad-Seg. (*Id.*) There are no other allegations in the SAC that show Boorman had knowledge of Plaintiff's placement in Ad-Seg without due process. Without knowledge of the constitutional violation, Boorman could not have acquiesced in, or been culpably indifferent to, Plaintiff's Fourteenth Amendment rights. Therefore, Plaintiff fails to state a claim with respect to Boorman's liability as a supervisor. Accordingly, it is respectfully recommended that the Court **GRANT** Boorman's Motion as it relates to Plaintiff's first cause of action.

**B. Conditions of Confinement Claims**

Plaintiff alleges that sleep deprivation caused by constant illumination and loud noise, denial of his access to the recreational yard, and a forced choice between sleep and

8

recreation time violate his Eighth Amendment rights.[3] (Doc. 88, at 16-19.) Boorman argues Plaintiff has failed to state a claim against him based solely on his supervisorial liability. (Doc. 98-1, at 2-3.) Plaintiff responds that Boorman personally participated in the violation, and he is therefore personally liable. (*See* Doc. 104, 3-7.)

When a pre-trial detainee challenges the conditions of his confinement, the Court must decide whether the conditions deprive the detainee's right to be free from punishment without due process under the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 533 (1979) ("*Bell*"). The Eighth Amendment provides the minimum standard of care for determining rights as a pretrial detainee. *See Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996). A claim by a pretrial detainee challenging a governmental action under the Fourteenth Amendment however, must be analyzed using an objective deliberate indifference standard. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015).

"[A] pretrial detainee who asserts a due process claim for . . . [inadequate conditions of confinement must] . . . prove more than negligence but less than subjective intent—something akin to reckless disregard[,]" because "mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro v. County of Los Angeles,* 833 F.3d at 1070-71 (9th Cir. 2016). Accordingly, to state a Fourteenth Amendment conditions of confinement claim, Plaintiff must allege: "(1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries." *Id.*, at 1071. "With respect to the third element, the defendant's conduct must

---

[3] Although Plaintiff alleges each condition of confinement as a separate cause of action, the analysis of each cause of action is identical. Accordingly, the Court jointly analyzes all three causes of action.

9

3:17-cv-00813-JLS-RBM

be objectively unreasonable, a test that will "necessarily turn on the facts and circumstances of each particular case." *Id.*, citing *Kingsley*, 135 S. Ct. at 2473.

Plaintiff alleges that a combination of lights "too bright to allow a human being to sleep," constant noise generated by inmates, a pattern of security checks, and a "daily routine" prevented him from getting more than five hours of sleep per night in two, two-and-a-half hour segments. (*See* Doc. 88, at 8-9, 17.) He alleges he suffered various injuries due to sleep deprivation. (*Id.*, at 10.) He also claims the Ad-Seg "daily routine" resulted in the denial of recreational time and a forced choice between sleep and exercise. (*Id.*, at 17-19.) This Court previously found that Plaintiff "has sufficiently shown a violation of his constitutional rights under the Fourteenth Amendment" with respect to his conditions of confinement claims, i.e., the second, third, and fourth causes of action. (Doc. 97, at 12.)

However, Plaintiff's SAC fails to allege facts showing that Boorman was personally involved in creating the conditions of confinement in Ad-Seg, or that Boorman had any control over those conditions. According to the SAC, Boorman's only involvement in the alleged deprivations was to answer a letter Plaintiff sent to Sheriff Gore. (*See* Doc. 88, at 4, 12-13, 21-22.) The SAC fails to sufficiently allege facts showing any other involvement on Boorman's part in Plaintiff's constitutional deprivations. *See Starr*, 652 F.3d at 1208-1209.

Plaintiff claims Boorman is personally liable in his capacity as a supervisor simply because he had notice of the constitutional violations after receiving Plaintiff's letter. (*See* Doc. 88, at 12-13, 17, 18, 19.) However, the fact that Boorman responded to the letter does not by itself indicate he had any supervisory capacity or authority over the SDCJ officials responsible for placing Plaintiff in Ad-Seg or subjecting him to the conditions he claims caused him injury. The SAC alleges Sheriff Gore directed Boorman to respond to Plaintiff's letter and "Boorman said the *sheriff* would look into" the grievance handling procedure. (Doc. 88, at 12-13 (emphasis added).) Furthermore, Boorman responded to Plaintiff's complaints about the grievance handling procedure, stating that Boorman's Lieutenant would "send out something to the teams [sic] supervisors regarding their

handling of grievances." (Doc. 88, at 22.) Both of these allegations suggest Boorman did not directly supervise the SDCJ officials charged with handling Plaintiff's grievances. The SAC further fails to allege Boorman had the authority to create or change any of the conditions in Ad-Seg, much less that he had any supervisory authority over the officials responsible for Plaintiff's placement there. *See Starr*, 652 F.3d at 1208-1209.

Additionally, the SAC fails to plausibly allege Boorman acquiesced in the constitutional violations relating to Plaintiff's conditions of confinement. Boorman's letter acknowledges many of Plaintiff's grievances, explains the reasoning behind procedures that caused the alleged constitutional violations, and even informs Plaintiff that the administration is "looking into" changing one of those procedures. (Doc. 88, at 21.) These allegations fail to plausibly show acquiescence or culpable indifference to Plaintiff's plight. *Starr*, 652 F.3d at 1208. Therefore, even if Boorman knew about the conditions Plaintiff faced in Ad-Seg, Plaintiff fails to plausibly allege that Boorman acquiesced in any constitutional deprivation or showed a reckless or callous indifference to Plaintiff's constitutional rights.

Instead, the SAC is based almost entirely on allegations of a widespread practice and policy, developed and implemented by Sheriff Gore and the County of San Diego. (*See generally* Doc. 88.) The Court has found Plaintiff sufficiently alleged that the conditions of his confinement violated his Fourteenth Amendment rights only with respect to the County of San Diego and Sheriff Gore. (Doc. 97.) The SAC successfully states a claim against the County because of policy and practice allegations (Doc. 97, at 14) and against Sheriff Gore because Sheriff Gore implemented a policy so constitutionally deficient that the policy itself is a repudiation of the Constitution and the moving force behind the violation (Doc. 97, at 18). But Plaintiff's SAC fails to state a claim for a violation of Plaintiff's Fourteenth Amendment rights relating to the conditions of his confinement with respect to Boorman. Accordingly, it is respectfully recommended that the Court **GRANT** Boorman's Motion to Dismiss with respect to Plaintiff's second, third, and fourth causes of action.

### C. Leave to Amend

As a general rule, a court freely grants leave to amend a complaint which has been dismissed. Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). "Leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). It "should be granted 'if it appears at all possible that the plaintiff can correct the defect.'" *Id.* (quoting *Breier v. N. Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 789-90 (9th Cir. 1963)). However, "the Ninth Circuit has recognized that plaintiffs do not enjoy unlimited opportunities to amend their complaints." *Stone v. Conrad Preby's*, 2013 WL 139939, at *2 (S.D. Cal. Jan.10, 2013) (citing *McHenry v. Renne*, 84 F.3d 1172, 1174 (9th Cir. 1996)); *see also Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000) ("[A] district court should grant leave to amend ... unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

Here, it does not appear that Plaintiff can cure the SAC's deficiencies as to defendant Boorman. Although Plaintiff has amended his pleadings in accordance with the Court's orders, the crux of Plaintiff's claim remains the same: policies designed and implemented by Sheriff Gore and the County of San Diego violated Plaintiff's constitutional rights. But the pleadings are deficient as to Boorman's liability. In fact, to successfully state a claim against Boorman, Plaintiff would have to substantially alter the factual basis of his claims. To invite amendment would be to welcome additional allegations that contradict and undermine other allegations in the SAC. Therefore, amending the SAC as to Boorman would be futile. Therefore, the Court respectfully recommends leave to amend be **<u>DENIED</u>**.

### V. CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Janice L. Sammartino under 28 U.S.C. § 636(b)(1)(B) and Rule 72.1(c)(1)(d) of the Local Civil Rules of the United States District Court for the Southern District of California. For the reasons set forth above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order approving and adopting this Report and Recommendation in full, and directing that

Judgment be entered **GRANTING** the Motion to Dismiss. Specifically, it is recommended that the Court **dismiss** Boorman and **terminate** him as a defendant to the action.

**IT IS ORDERED** that no later than **August 7, 2019**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 6, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATE: July 8, 2019

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE