1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLIOT SCOTT GRIZZLE,<br><br>                                Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO et al.,<br><br>                                Defendants. | Case No.:  3:17-cv-00813-JLS-RBM<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE RE: DEFENDANTS' MOTION TO DISMISS AND STRIKE PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>**[Doc. 111]** |

## I.   INTRODUCTION

Plaintiff Elliot Scott Grizzle ("Plaintiff") brings an action arising under 42 U.S.C. § 1983 ("Section 1983") related to his placement in Administrative Segregation ("Ad-Seg") at the San Diego Central Jail ("SDCJ") while he was a pre-trial detainee.  On October 11, 2019, Defendants the County of San Diego ("the County"), Sheriff William Gore ("Sheriff Gore"), Lieutenant Eric Froistad ("Lieutenant Froistad"),[1] Lieutenant Lena Lovelace ("Lieutenant Lovelace"), and Aaron Boorman ("Sergeant Boorman") (collectively

---

[1] The parties stipulate to Froistad's dismissal without prejudice. *See infra* pp. 11, 13.

1  "Defendants") filed a Motion to Dismiss and Strike Portions of Plaintiff's Third Amended
2  Complaint ("Motion").   (Doc. 111.)   Plaintiff filed an Opposition to the Motion on
3  November 27, 2019 and Defendants filed a Reply on December 5, 2019.  (Docs. 113-114.)

4       The matter was referred to the undersigned for Report and Recommendation.  *See*
5  28 U.S.C. § 636(b)(1)(B); CivLR 72.1(c) and 72.3(a).   After a thorough review of the
6  pleadings, papers, prior orders of the Court, the facts, and applicable law, the undersigned
7  respectfully recommends that Defendants' Motion to Dismiss be **GRANTED, IN PART**,
8  and the Motion to Dismiss and/or Motion to Strike the demand for punitive damages be
9  **DENIED**.

10  ## II.   **BACKGROUND**

11       This case has been in the initial pleading stage since April 2017. (Doc. 1.)  Plaintiff
12  initially represented himself pro se, but he is now represented by counsel.  At present, this
13  is the fourth attempt to plead and/or amend the Complaint (Docs. 1, 82, 88, 110), the sixth
14  Motion to Dismiss filed by present and/or formerly-named Defendants (Docs. 55, 64, 83,
15  93, 98, 111), the fifth Report & Recommendation ("R&R") issued by a magistrate judge
16  (Docs. 63, 74, 97, 106), and the fifth Order on an R&R and/or Motion to Dismiss by District
17  Judge Janis L. Sammartino (Docs. 73, 79, 92, 108, 115).  In addition to setting out the
18  allegations presented in the Third Amended Complaint ("TAC"), the procedural history of
19  the pleading stage is outlined below.

20      A.   Allegations in TAC

21       The following facts from Plaintiff's TAC (Doc. 110) are accepted as true for
22  purposes of this Motion. *See infra* pp. 9-10.

23       i.   *Plaintiff's Placement in Ad-Seg*

24       On August 3, 2016, the San Diego County Sheriff's Department took Plaintiff into
25  custody and immediately housed him in the Ad-Seg unit of SDCJ. (Doc. 110 ¶¶ 17, 21.)
26  When Plaintiff inquired about his Ad-Seg placement, staff instructed him to contact
27  "classification." (*Id.* ¶ 18.)  Plaintiff protested the lack of due process in his Ad-Seg
28  placement and the conditions of Ad-Seg confinement. (*Id.* ¶¶ 30-42.)  He submitted two

grievances concerning these issues during his first week in Ad-Seg. (*Id.* ¶¶ 30, 32.) He sought: (1) notice of the reason for his Ad-Seg placement; (2) an opportunity to be heard to rebut the charges for his placement; (3) immediate release from Ad-Seg; and (4) periodic reviews of his placement. (*Id.*) Plaintiff gave the form to an unnamed deputy but received no response. (*Id.*) He made similar requests "on at least a weekly basis and addressed to 'classification.'" (*Id.* ¶¶ 30, 34-36.) Plaintiff also protested to over fifty jail staff including Lieutenant Lovelace and Sergeant Boorman. (*Id.* ¶ 35.)

Plaintiff never learned the basis for his Ad-Seg placement. (*Id.* ¶ 42.) Ultimately, he remained in Ad-Seg for the entirety of his pretrial detention until August 27, 2017. (*Id.* ¶¶ 3, 21, 36.)

> ii. *Ad-Seg Routine*

Plaintiff alleges the County, through Sheriff Gore, subjected him to the following daily routine in Ad-Seg:

- **3:30 a.m.–7:00 a.m.** Ad-Seg inmates wake up for morning count with cell lights turned to "bright." Bright lights remain illuminated until breakfast is distributed around 4:30 a.m., and then lights are dimmed until 7:00 a.m. (Doc. 110 ¶ 24.)

- **7:00 a.m.–Approximately 10:45 p.m.** Daily programming runs from 7:00 a.m. until 9:45 p.m.–10:45 p.m. (*Id.* ¶¶ 22, 24.) Cell lights are turned to a bright setting and a "dayroom" television is on with the highest volume setting. (*Id.* ¶¶ 24, 36.) The first cell is allowed fifty minutes of dayroom time. (*Id.* ¶ 24.) Hourly security walks are punctuated by the opening and closing of large fire doors, which creates loud noises. (*Id.* ¶ 25.) Televisions are off between 9:45p.m.–11:45 p.m. (*Id.* ¶ 22.)

- **11:00 p.m.** Deputies conduct a "count," which required Plaintiff stand up. (*Id.*)

- **12:00 a.m.–1:00 a.m.** Guards issue razors to inmates by opening/closing each cell tray slot, creating loud noises. (*Id.*) Razors are retrieved at 1:00 a.m., then cell lights are dimmed but still "too bright to allow a human being to sleep." (*Id.*)

- **Approximately 1:30 a.m.–3:30 a.m.** Ad-Seg inmates are given "yard time" but the yard has no direct access to the sun or outdoors. (*Id.* at ¶ 23.)

This daily routine resulted in Plaintiff only being able to sleep for approximately five hours. (*Id.* ¶ 26.) But Plaintiff only got one hour of uninterrupted sleep due to security checks, yard time, and loud banging noises. (*Id.*) Mentally ill inmates who "constantly screamed, yelled, loudly beat and banged on the cell doors, toilets, and metal bunk beds" exacerbated the sleep deprivation. (*Id.* ¶ 27.) Plaintiff suffered various health-related ailments. (*Id.* ¶ 29.)

### iii.  *Plaintiff's Written and Verbal Grievances*

In addition to the grievances outlined *supra* pp. 2-3, on March 30, 2017, Plaintiff submitted three additional grievances: one for his Ad-Seg placement, and two for sleep deprivation. (*Id.* ¶ 38.) On this same day, Plaintiff wrote a letter to Sheriff Gore outlining some of the issues set forth in Plaintiff's prior grievances ("March Letter"). (*Id.* ¶ 37.) On April 11, 2017, Plaintiff filed another grievance concerning SDCJ's failure to respond to his prior grievances. (*Id.* ¶ 39.) One week later, Plaintiff received Sergeant Boorman's response to his March Letter. (*Id.* ¶ 40; *see also* Ex. A, 24-25.) Boorman's response explained: (1) counts are timed in accordance with department policies and procedures; (2) SDCJ is exploring alternate times for razor distribution; (3) SDCJ discourages excess noisemaking by inmates, but notes it is impossible to silence inmates; (4) Ad-Seg's yard time is scheduled due to population needs and jail procedure; and (5) teams are to complete mandatory training on grievance processing. (*Id.* at Ex. A, 24.)

### iv.  *TAC's Causes of Action*

The TAC alleges four causes of action against the County, Sheriff Gore, Lieutenant Lovelace, and Sergeant Boorman. The first cause of action alleges Fourteenth Amendment due process violations as to his Ad-Seg placement at SDCJ. (Doc. 110 ¶¶ 43-51.) The second, third, and fourth causes of action allege Fourteenth and Eighth Amendment violations premised on sleep deprivation, prevention from exercising, and being forced to

choose between sleep and exercise, respectively.[2]  (*Id.* ¶¶ 52-76.)  Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, costs, and fees.  (*Id.* at 21-22.)

The County is sued for maintaining policies which were the moving force behind Plaintiff's injuries.  (*Id.* ¶ 4.)  Sheriff Gore is sued in his individual capacity, with liability being premised upon his notice and failure to correct the alleged constitutional injuries.  (Doc. 110 ¶ 5); *see infra* p. 11 n.5.  Lieutenant Lovelace and Sergeant Boorman are sued in their individual capacities.[3]  (Doc. 110 ¶¶ 8-9.)  Lovelace is a supervisor of the Jail Population Management Unit.  (*Id.* ¶ 9.)  Lovelace's liability is premised upon her awareness of SDCJ's constitutionally-deficient Ad-Seg program and her failure to provide Plaintiff due process with respect to his Ad-Seg placement.  (*Id.*)  Boorman's liability is premised upon his receipt of the March Letter and failure to rectify the issues.  (*Id.* ¶ 8.)

B.    Second Amended Complaint & Motion Practice

The procedural history outlined below is limited to the pleadings, motions, and orders immediately preceding the filing of the TAC.  Plaintiff's Second Amended Complaint ("SAC"), filed on November 9, 2018, alleged substantially the same causes of action and requests for relief as the TAC with two exceptions.  (*Compare* SAC, Doc. 88 ¶¶ 44-73 *with* TAC, Doc. 110 ¶¶ 43-76.)  The SAC pleaded the second, third, and fourth causes of action as only Eighth Amendment violations, not Fourteenth violations.  (Doc. 88 ¶¶ 53, 61, 68.)  The SAC made no request for punitive damages.  (*Id.* at 19.)

On November 30, 2018, the County, Sheriff Gore, Lieutenant Froistad, and Lieutenant Lovelace filed a Motion to Dismiss the SAC.  (Doc. 93.)  At that time, Sergeant

---

[2] The TAC alleges both Eighth and Fourteenth Amendment violations relating to confinement conditions, but Plaintiff's Opposition narrows it to Fourteenth Amendment violations based upon Plaintiff's status as a pretrial detainee.  (Doc. 110 ¶¶ 53, 62, 70; Doc. 113 at 1.)  As such, the undersigned focuses its analysis on claims under the Fourteenth Amendment.  *See Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016) (internal citations omitted) (stating "Eighth Amendment protections apply once a prisoner has been convicted of a crime, while pretrial detainees are entitled to the potentially more expansive [Fourteenth Amendment] protections . . .").

[3] In referring to Lieutenant Lovelace, the TAC uses the pronoun "he" while the instant Motion uses the pronoun "she."  (Doc. 110 ¶ 9; Doc. 111 at 5.)  Lovelace is referred to herein as "her" and "she."

Boorman had not been served, and thus, did not join in the Motion to Dismiss. (*See* Doc. 96 at 8 n.2.) On March 7, 2019, the undersigned issued an R&R recommending the Motion be granted in part, including recommending Boorman's dismissal based upon lack of service. (Doc. 97 at 22-23.) During the pendency of the parties' objection period for the March 7, 2019 R&R, Defendant Boorman accepted service of the SAC and filed a separate Motion to Dismiss the SAC on behalf of himself only. (Doc. 98.) On June 8, 2019, the undersigned issued an R&R recommending that Boorman's Motion be granted. (Doc. 106.) On August 26, 2019, Judge Sammartino adopted the March 7, 2019 R&R, but did not rule upon the June 8, 2019 R&R on Boorman's Motion because the parties' objection period of that R&R had yet to expire. (Doc. 108 at 2 n.1.) Plaintiff's filing of the TAC rendered Boorman's Motion to Dismiss the SAC as moot. (Docs. 111, 115.)

C.    Orders on Motion to Dismiss SAC & New Allegations in TAC

The Court dismissed certain causes of action in the SAC as against various Defendants and also dismissed the request for declaratory and injunctive relief. (*See* Docs. 97, 108.) The rulings pertinent to each Defendant which remain at issue are outlined below.

i.    *First Cause of Action against Sheriff Gore*

The Court dismissed the first cause of action (i.e., due process violation relating to Ad-Seg placement) as against Sheriff Gore. (Doc. 108 at 12-14.) The Court found Plaintiff failed to allege that Gore personally participated in, acquiesced in, or was culpably indifferent to the allegations constituting Plaintiff's first cause of action. (*Id.* at 13.)

The TAC continues to name Gore in the first cause of action, but contains no new allegations relating to him. (Doc. 110 ¶¶ 43-51.) The instant Motion seeks dismissal of the first cause of action against Gore. (Doc. 111 at 11-13.)

ii.    *Second, Third, and Fourth Causes of Action against Lt. Lovelace*

The Court granted the Motion to Dismiss the second, third, and fourth causes of action against Lieutenant Lovelace (i.e., conditions of confinement claims). (Doc. 108 at 11-12.) The Court found the SAC failed to allege any causal connection or Lovelace's

6

personal participation or culpable indifference to these claims. (*Id.* (citing Doc. 97 at 16-17).)

The TAC names Lieutenant Lovelace in the second, third, and fourth causes of action, and Defendants seek dismissal of these claims as to her.[4] (Doc. 110 ¶¶ 9, 42, 46, 48, 57, 66, 75; Doc. 111 at 14-15.) New allegations in the TAC against Lovelace state, in part:

> **[Parties Section]**  Plaintiff is informed and believes that Defendant Lovelace is a supervisor . . .  In addition, Defendant Lovelace was aware of the constitutionally deficient Ad-Seg. program at the [SDCJ], but still subjected Plaintiff to the constitutional injury as described below in the Ad-Seg. program through sleep deprivation, lack of outdoor exercise, and forcing inmates to choose between sleep and exercise.  Defendant Lovelace had a duty to conduct periodic reviews to ensure that Plaintiff was comported due process in the "classification" process, but failed to provide Plaintiff adequate due process by failing to provide a reason for Ad-Seg. classification and failing to classify Plaintiff outside of Ad-Seg. for over a year during any kind of periodic reviews . . . .  (*Id.* ¶ 9.)

> **[Second Cause of Action]**  Further, this sleep deprivation described herein was caused by [D]efendant's . . . policy . . . Lieut. Lovelace followed the obviously constitutionally deficient policy by initially classifying Plaintiff into Ad-Seg . . . .  (*Id.* ¶ 57.)

> **[Third Cause of Action]**  This denial of Yard Time was a custom, practice, policy, or long-standing procedure of San Diego County and its Sheriff William Gore.  Lovelace carried out the policy by failing to conduct a proper periodic review of [P]laintiff's classification thereby subjecting him to the Ad-Seg program and the denial of Yard Time . . . .  (*Id.* ¶ 66.)

> **[Fourth Cause of Action]**  Plaintiff['s] placement in [Ad-Seg] by Lieut. Lovelace, pursuant to San Diego County policy, was the moving force behind Plaintiff's injuries. (*Id.* ¶ 75.)

/ / /

---

[4] New allegations in the TAC are denoted by underlining.

7

### iii.   *All Causes of Action against Sgt. Boorman*

Although Judge Sammartino denied Boorman's Motion to Dismiss as moot, the June 8, 2019 R&R on the Motion is informative.  (*See generally* Docs. 106, 115.)   The undersigned recommended all causes of action be dismissed as against Boorman.  (Doc. 106 at 6-13.)  As to the first cause of action (i.e., due process violation relating to Ad-Seg placement), the undersigned found the SAC failed to allege that Boorman acted in a supervisory capacity, or personally participated, acquiesced, or showed culpable indifference to the alleged Fourteenth Amendment violation.  (*Id.* at 8.)  As to the remaining causes of action (i.e., conditions of confinement claims), the undersigned found the SAC failed to sufficiently allege facts showing that "Boorman was personally involved in creating the conditions of confinement . . . or that Boorman had any control over those conditions."  (*Id.* at 10.)  The undersigned also found the SAC failed to plausibly allege Boorman acquiesced or acted with culpable indifference to said conditions.  (*Id.* at 11.)

The TAC still names Boorman in all causes of action, and Defendants seek dismissal of these claims.  (Doc. 110 ¶¶ 8, 48, 57, 66; Doc. 111 at 15-19.)  The allegations state:

> **[Parties Section]**  Sgt. Boorman should have recognized the constitutional violation in causing an inmate to choose between sleep and recreational yard time, the lack of outdoor exercise, and the constitutionally deficient County policy that was causing injury to Plaintiff and every other Ad-Seg. inmate . . . .  Moreover, the failure to rectify the obviously constitutionally deficient policy at the [SDCJ] is a basis for liability because Boorman knew that the Ad-Seg. routine resulted in the deprivation of at least one basic human need of every inmate in Ad-Seg. and he did nothing to stop the constitutional violations of which he was aware.  (*Id.* ¶ 8.)

> **[First Cause of Action]**  Despite being aware of these issues, no Defendant, including Lovelace, Boorman, and Gore, took any action to correct these constitutional violations. . . Lieut. Lovelace intentionally adhered to these constitutionally deficient policies of San Diego County . . . and Boorman when he failed to take action to correct the deprivation of at least one basic human need per day of the inmates in Ad-Seg.  (*Id.*¶ 48.)

> **[Second Cause of Action]**  Further, this sleep deprivation described herein was caused by [D]efendant's program as a policy of San Diego County and

its Sheriff William Gore. <u>Lieut. Lovelace followed the obviously constitutionally deficient policy . . . and later when Boorman became aware of the conditions in Ad-Seg, but did nothing to stop them.</u> (*Id.* ¶ 57.)

**[Third Cause of Action]** This denial of Yard Time was a custom, practice, policy, or long-standing procedure of San Diego County and its Sheriff William Gore . . . <u>Boorman became aware of the fact that Plaintiff was not receiving proper Yard Time when investigating and responding to Plaintiff's letter to Sheriff Gore thereby showing Boorman's acceptance of the policy and culpable indifference.</u> (*Id.* ¶ 66.)

### iv.   *Injunctive and Declaratory Relief*

The Court's August 27, 2019 Order dismissed Plaintiff's prayer for declaratory and injunctive relief as moot in light of Plaintiff's transfer to the California Institute for Men in Chino, California. (Doc. 108 at 14.) The Court found the "capable of repetition, yet evading review" mootness exception inapplicable because Plaintiff failed to show a "reasonable expectation that he will be subjected to the same action again." (*Id.*)

The TAC continues to request declaratory and injunctive relief, and Defendants seek dismissal of the same based upon the grounds argued in their Motion to Dismiss the SAC. (Doc. 110 at 21; Doc. 111 at 9-10; *see also* Doc. 93 at 11.) The TAC's new allegations contend such relief is appropriate because the conduct alleged in each cause of action is continuing and an ongoing government policy. (Doc. 110 at 21 (citations omitted).)

### v.   *TAC's Request for Punitive Damages*

The TAC, for the first time, seeks punitive damages. (Doc. 110 ¶¶ 51, 60, 68, 76.) Defendants seek to dismiss and/or strike these damages. (Doc. 111 at 10-11.)

## III.   <u>LEGAL STANDARD</u>

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. FED. R. CIV. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The motion may be granted only if the complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122

9

(9th Cir. 2013) (internal quotations and citations omitted).  Although a complaint need not contain detailed factual allegations, it must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)).  A court need not accept "legal conclusions" as true.  *Iqbal*, 556 U.S. at 678.

In deciding a 12(b)(6) motion, "all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them."  *Navarro*, 250 F.3d at 732 (citing *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996)).  But, "to be entitled to the presumption of truth, allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing the sufficiency of a complaint, the court is limited to the complaint itself and its attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007); *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014).

## IV.   **DISCUSSION**

Defendants seek to dismiss: the first cause of action against Sheriff Gore; the second, third, and fourth causes of action against Lieutenant Lovelace; and all causes of action against Sergeant Boorman.  (Doc. 111 at 7-13.)  Plaintiff counters that viable claims exist as against Gore and Boorman because of their awareness of the constitutionally-deficient policies for the classification and housing of Ad-Seg inmates and concomitant failure to

10

remedy the issues.  (Doc. 113 at 6-9.)  Plaintiff counters that the second, third, and fourth causes of action state a claim against Lovelace because her classification decision set in motion the series of constitutionally-deficient conditions of confinement of which she was also aware.  (*Id.* at 7-8.)  The parties dispute the appropriateness of declaratory and injunctive relief and punitive damages.  (Doc. 111 at 5-6; Doc. 113 at 3-5.)  Finally, Plaintiff concedes to Lieutenant Froistad's dismissal without prejudice.  (Doc. 111 at 14.)

A.    Supervisory Liability in Section 1983 Claims

Each Defendant at issue—Sheriff Gore, Lieutenant Lovelace, and Sergeant Boorman—is sued in his or her individual capacity.[5]

Individual capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. *Kentucky*, 473 U.S. at 165 (citation omitted). In general, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*"  *Iqbal*, 556 U.S. at 676. However, a supervisor may be held liable under Section 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citing *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987)).

"The requisite causal connection can be established . . . by setting in motion a series of acts by others," or by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a

---

[5] The TAC also alleges Sheriff Gore is a final policymaker and his official acts "are imputed to and impose direct liability on [the County] as its official representative." (Doc. 110 ¶¶ 6-7.)  Given that the County has been sued directly as an entity, the foregoing allegations against Gore are to be treated as pleading an action against the County. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).  Moreover, given that Plaintiff is seeking punitive damages against Sheriff Gore, a strong presumption is created in favor of an individual-capacity suit because an official-capacity suit for damages would be barred. *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016).

1   constitutional injury." *Starr*, 652 F.3d at 1207-08 (alterations in original) (internal

2   quotations and citation omitted).  A supervisor can be liable in his individual capacity for

3   "acquiescence or culpable indifference" in the constitutional deprivation.  *Id.* at 1208

4   (internal quotations and citation omitted).  Supervisory liability may also exist without

5   overt personal participation in the offensive act "if supervisory officials implement a policy

6   so deficient that the policy itself is a repudiation of constitutional rights and is the moving

7   force of the constitutional violation." *Hansen*, 885 F.2d at 646 (citing *Thompkins*, 828 F.2d

8   at 304) (internal quotations omitted).

9       B.   <u>First Cause of Action against Sheriff Gore</u>

10      The TAC states Sheriff Gore is being sued in his individual capacity.  (Doc. 110 ¶

11  5.)   The issue here is whether Sheriff Gore was personally involved in the Ad-Seg

12  classification decision or whether a sufficient causal connection exists between his conduct

13  and the alleged denial of due process.

14      Due process requires that "[p]rison officials must hold an informal nonadversary

15  hearing within a reasonable time after the prisoner is segregated" for administrative

16  purposes. *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986), *abrogated in part*

17  *on other grounds by Sandin v. Connor*, 515 U.S. 492 (1995).  "[P]rison officials must

18  inform the prisoner of the charges against the prisoner or their reasons for segregation" and

19  "allow the prisoner to present his view." *Id.*   Additionally, prison officials must

20  periodically review the initial Ad-Seg placement. *Id.* at 1101.

21      Notably, the Court dismissed Sheriff Gore from the first cause of action in the SAC

22  because Plaintiff failed to allege Gore's personal participation, acquiescence, or culpable

23  indifference to any due process violation.  (Doc. 108 at 12-13.)  Yet the TAC alleges no

24  new facts to establish a causal connection between any individual wrongful conduct of

25  Gore and Plaintiff's Ad-Seg placement. *Hansen*, 885 F.2d at 646.

26       Plaintiff contends the TAC alleges Gore "knew about the deficient policies and

27  practices in the classification . . . of Ad-Seg[] inmates at . . . SDCJ . . . ." (Doc. 113 at 6.)

28  However, the TAC's only reference to Gore's notice of the classification issue relates to

the March Letter. (Doc. 110 ¶ 37.) As Judge Sammartino's Order previously stated, "Plaintiff's letter, although difficult to decipher, does not appear to address Plaintiff's due process cause of action." (Doc. 108 at 13 (citing SAC, Ex. A).) The March Letter's substance has not changed. In any event, there is no allegation that Gore received and reviewed the letter. (Doc. 110 ¶¶ 37, 47.) While Plaintiff generally alleges Gore is the final policymaker who is responsible for implementing policies pertaining to inmate housing, this allegation is directed against the County. *See supra* p. 11 n.5. In sum, the TAC fails to allege any new allegations establishing Gore's awareness of the violations or any causal connection between Gore's conduct and the alleged due process violation.

Failure to correct previously-identified pleading deficiencies is a "strong indication that the plaintiff[] has no additional facts to plead." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (internal citation omitted); *see also Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) (affirming dismissal of a third amended complaint with prejudice when pleading deficiencies "persisted in every prior iteration of the [complaint]."). For the reasons stated above, the undersigned recommends Defendants' Motion to Dismiss the individual capacity claim against Sheriff Gore in the first cause of action be **GRANTED**.

C. Order to Dismiss the individual capacity claim  Underline: All Causes of Action against Lt. Froistad

Plaintiff states he intentionally omitted Lieutenant Froistad from the TAC and concedes to his dismissal without prejudice. (Doc. 113 at 7.) As such, the undersigned recommends Defendants' Motion to Dismiss all claims against Froistad be **GRANTED**.

D. Second, Third, and Fourth Causes of Action against Lt. Lovelace

The TAC asserts individual capacity claims against Lieutenant Lovelace in her supervisor role. (Doc. 110 ¶ 9.) Defendants argue the TAC fails to state allegations showing Lovelace personally participated in, is causally linked to, or acted with culpable indifference to the unlawful Ad-Seg confinement conditions. (Doc. 111 at 15.) Plaintiff counters that Lovelace's classification decision set in motion the series of unlawful conditions which shows a reckless or callous indifference to his rights. (Doc. 113 at 8.)

13

When a pretrial detainee challenges his conditions of confinement, the detainee is entitled to the protections of the Fourteenth Amendment. *Mendiola-Martinez*, 836 F.3d at n.5; *see also Bell v. Wolfish*, 441 U.S. 520, 533 (1979). To state a claim under the Fourteenth Amendment, plaintiff must show the prison officials acted with "deliberate indifference" to his rights. *See Castro v. City of L.A.*, 833 F.3d 1060, 1068 (9th Cir. 2016) (en banc) *overruling Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232 (9th Cir. 2016).

The issue is whether the TAC asserts sufficient allegations to establish a causal connection between Lovelace's classification decision and the unlawful conditions of confinement.[6] And it does. The TAC alleges Lovelace was "aware of the constitutionally deficient Ad-Seg[] program at . . . [SDCJ]" but still subjected Plaintiff to the conditions at issue. (Doc. 110 ¶ 9.) Plaintiff alleges he personally spoke to Lovelace concerning the unlawful conditions and she took no action to remedy the situation. (*Id.* ¶¶ 35-36, 55-56, 64-65, 72-74.) Plaintiff also alleges Lovelace carried out the constitutionally-deficient policies and/or was the moving force behind the unconstitutional conditions. (*Id.* ¶¶ 57, 66, 75.) These allegations plausibly establish Lovelace's classification decision set in motion a series of unlawful conduct of which she was aware and/or knowingly refused to terminate. *Starr*, 652 F.3d at 1207-08. At a minimum, the allegations are sufficient to show acquiescence or culpable indifference. *Id.* at 1208.

The foregoing allegations state a claim at the pleading stage. *Starr*, 652 F.3d at 1208. Accordingly, the undersigned recommends Defendants' Motion to Dismiss the second, third, and fourth causes of action against Lieutenant Lovelace be **DENIED**.

E.     All Causes of Action against Sgt. Boorman

Defendants seek dismissal of all causes of action against Sergeant Boorman. As to the first cause of action, Defendants argue there are no allegations to show Boorman's

---

[6] Although Plaintiff alleges each condition of confinement as a separate cause of action, the plausibility analysis for each cause of action is identical as to Lovelace. Accordingly, the analysis for these causes of action is combined herein.

14

1  deliberate indifference to the due process violation because there is nothing to show his
2  notice of the Ad-Seg classification decision. (Doc. 111 at 16.) Defendants contend the
3  remaining causes of action fail because the no causal connection between Boorman's
4  conduct and the alleged unlawful confinement conditions has been established. (*Id.* at 17-
5  19.) Plaintiff contends Boorman's response to the March Letter, coupled with his failure
6  to rectify the issues, state plausible claims for relief. (Doc. 113 at 8-9.)

    *i.* *First Cause of Action*

8    As to the first cause of action, the undersigned's July 8, 2019 R&R on the SAC is
9  instructive because it recommended dismissal of the claim against Boorman. (Doc. 106 at
10  6-8.) The undersigned found the March Letter lacked information about Plaintiff's
11  unlawful placement in Ad-Seg and Boorman's response does not show he had knowledge
12  of the same. (*Id.* at 8.) The undersigned reasoned, "[w]ithout knowledge of the
13  constitutional violation, Boorman could not have acquiesced in, or been culpably
14  indifferent to, Plaintiff's Fourteenth Amendment rights." (*Id.*)

15    The TAC contains no new allegations to establish any awareness by Boorman as to
16  the classification decision or a sufficient causal connection between any individual
17  wrongful conduct of Boorman and Plaintiff's Ad-Seg placement. *See supra* pp. 8-9;
18  *Hansen*, 885 F.2d at 646. While the TAC contains a new allegation stating "Boorman
19  failed to take action to correct the deprivation of at least one basic human need per day of
20  the inmates in Ad-Seg," this allegation does not plausibly suggest Boorman set in motion
21  Lieutenant Lovelace's classification decision or knowingly refused to terminate a series of
22  actions relating to the classification decision. (Doc. 110 ¶ 48); *Starr*, 652 F.3d at 1207-08.

23    Without sufficient allegations to support Boorman's personal participation,
24  acquiescence, or culpable indifference to the classification decision, the undersigned
25  recommends Defendants' Motion to Dismiss the first cause of action against Sergeant
26  Boorman be **GRANTED**.

27  / / /
28  / / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii.    *Second, Third, and Fourth Causes of Action*

As to the conditions of confinement claims, the parties dispute the sufficiency of the TAC's allegations against Sergeant Boorman in stating claims for supervisory liability.

As an initial matter, Defendants seek to differentiate between the third cause of action (i.e., denial of yard time) and second and fourth causes of action (i.e., sleep deprivation/choice between sleep and exercise, respectively). (Doc. 111 at 15-19.) Defendants contend the third cause of action lacks allegations involving Boorman and the March Letter never addressed this issue. (*Id.* at 15-17.) However, Plaintiff's March Letter complained that "[a]ccess to outdoor recreation is . . . only afforded to [inmates] upon request after the 10:30pm-11:30pm count, between then [and] breakfast forcing [inmates] to choose between out of cell time [and] sleep." (Doc. 110 ¶ 63; Ex. A at 27.) As such, it is reasonable to infer Boorman had notice of the denial of yard time. *Navarro*, 250 F.3d at 732; *Tellabs*, 551 U.S. at 322-23; *In re NVIDIA*, 768 F.3d at 1051. Therefore, the plausibility analysis of the conditions of confinement claims is identical as to Boorman.

The TAC alleges Boorman "should have recognized the constitutional violation in causing an inmate to choose between sleep and recreational yard time, the lack of outdoor exercise, and the constitutionally deficient County policy that was causing injury to Plaintiff . . ." (Doc. 110 ¶ 8.) It alleges Boorman's response to the March Letter put him on notice of the constitutional violations. (*Id.* ¶¶ 35-37; Ex. A, 24-25.) It alleges Boorman's failure to rectify the conditions at SDCJ is the basis for liability as "Boorman knew the Ad-Seg[] routine resulted in the deprivation of at lease one basic human need . . . and he did nothing to stop the constitutional violations of which he was aware." (*Id.* ¶ 8.) This awareness, coupled with a failure to rectify the conditions, plausibly establishes a causal connection between Boorman's conduct and the alleged unlawful conditions of confinement. *Starr*, 652 F.3d at 1207-1208; *Hansen*, 885 F.2d at 646; (Doc. 110 ¶¶ 55-57, 64-66, 72-74.)

Accordingly, the undersigned recommends Defendants' Motion to Dismiss the second, third, and fourth causes of action against Sergeant Boorman be **DENIED**.

16

F.    Injunctive and Declaratory Relief

The mootness of Plaintiff's request for injunctive and declaratory relief has been extensively litigated. (*See* Doc. 93 at 11; Doc. 95 at 9-10; Doc. 96 at 9; Doc. 97 at 19-21; Doc. 100 at 10-11; Doc. 108 at 14.)   In fact, the TAC cites the same caselaw cited in Plaintiff's Objections to the March 7, 2019 R&R which was adopted in full. (*Compare* Doc. 110 at 21 *with* Doc. 100 at 10-11.)   Ultimately, the Court found that the requested relief is moot because Plaintiff is no longer subject to the challenged conditions and policies at SDCJ due to Plaintiff's transfer to the California Institute for Men. (Doc. 108 at 14.)   The Court found that the "capable of repetition, yet evading review" mootness exception inapplicable because Plaintiff failed to show a reasonable expectation that he will be subject to the same action again. (*Id.*)

Generally, release from a facility while claims are pending will moot claims for injunctive relief for that facility's policies unless the suit has been certified as a class action. *See Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir.1995) (citations omitted).   The same is true for declaratory relief, because the released party is no longer subject to the conditions or policies he challenges.   *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (citing *Rhodes v. Stewart*, 488 U.S. 1, 2-4 (1988)).   An exception to the mootness doctrine exists for claims that are capable of repetition, yet evade review.   But, the exception "is limited to extraordinary cases in which (1) the duration of the challenged action is too short to be fully litigated before it ceases, and (2) there is a reasonable expectation that the plaintiff will be subjected to the same action again.   *Id.* (citation omitted).

Plaintiff contends a variation of the mootness exception applies because he is bringing a putative class action to challenge an uncontested ongoing government policy related to pretrial detention conditions. (Doc. 113 at 3.)   Plaintiff cites *Gerstein v. Pugh* arguing claims challenging pretrial detention conditions cannot be found moot due to the inherently transitory nature of detention and the claim's potential to evade review. (*Id.* at 4 (citing 420 U.S. 103 (1975).)   Contrary to *Gerstein*, this lawsuit has not been certified as a class action.   420 U.S. at 106-107.   Moreover, *U.S. v. Sanchez-Gomez* rejected the notion

17

that *Gerstein* supports a freestanding exception to the mootness doctrine outside the class action context. 138 S.Ct. 1532, 1538 (2018).  The Court rejected a "functional class action" because the "mere presence of allegations that . . . benefit other similarly situated individuals cannot save [a plaintiff's] suit from mootness once their individual claims have dissipated." *Id.* at 1540 (internal quotations and citations omitted).

Here, there is no dispute that Plaintiff has been transferred out of SDCJ.  (Doc. 113 at 4; Doc. 114 at 3.)  Without any reasonable expectation that Plaintiff will be subject to the same action again and absent any class certification, the mootness exception for claims that are capable of repetition yet evade review does not apply.

Accordingly, the undersigned recommends Defendants' Motion to Dismiss the requests for injunctive and declaratory relief be **GRANTED**.

### G.   Punitive Damages

Defendants contend the punitive damages demand should be dismissed and/or stricken against the Individual Defendants.[7]  (Doc. 111 at 10-11.)  Plaintiff counters the demand is viable because the Individual Defendants knew the alleged constitutional violations were occurring and they failed to rectify the issues.  (Doc. 113 at 5.)

Punitive damages are available under Section 1983.  *See Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 17 (1991); *Graham*, 473 U.S. at 167 n.13; *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005).  Punitive damages may be awarded if the defendant acted with an evil motive or intent or demonstrated reckless or callous indifference to the constitutional rights of the plaintiff.  *See Smith v. Wade*, 461 U.S. 30, 56 (1983).

Plaintiff alleges that, despite complaining verbally and in writing concerning his Ad-Seg confinement and the conditions of confinement, the Individual Defendants failed to take any action to rectify the issues.  *See supra* pp. 12-16.  At the pleading stage, this suffices to show reckless/callous indifference to Plaintiff's rights under the Fourteenth

---

[7] Plaintiff concedes this damages demand is limited to the Individual Defendants.  (Doc. 113 at 5.)

Amendment.  *See Matthews v. Holland*, 1:14-cv-1959-SKO-PC, 2017 WL 1093847, **6-7 (E.D. Mar. 23, 2017) (denying motion to dismiss punitive damages demand at pleading stage in case involving Eighth Amendment violations related to Ad-Seg confinement).

Accordingly, the undersigned recommends Defendants' Motion to Dismiss and/or the Motion to Strike the punitive damages demand be **DENIED**.

H.    Leave to Amend

Finally, Defendants requests that the Court deny leave to amend given Plaintiff's ample opportunity to amend and correct the pleading deficiencies.  (Doc. 111 at 19.)

Courts freely grant leave to amend a complaint which has been dismissed.  FED. R. CIV. P. 15(a); *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  "[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal quotations and citations omitted).

This is the fourth attempt to plead and/or amend the complaint, and Plaintiff has been represented by counsel in the two prior iterations of the amended pleadings.  (Docs. 82, 88, 110.)  Judge Sammartino's August 27, 2019 Order cautioned Plaintiff that he had "one final opportunity to amend."  (Doc. 108 at 15.)  As to Sheriff Gore and Sergeant Boorman, further leave to amend would be futile.  Even in the fourth iteration of the pleading, the first cause of action still fails to state an individual capacity claim against Sheriff Gore because there are no allegations to show his personal participation, acquiescence, or culpable indifference to any due process violation.  Likewise, the claims against Boorman are predicated upon his response to the March Letter relating to conditions of confinement and grievance handling, but there are no factual allegations to suggest Boorman had knowledge of the lack of due process afforded to Plaintiff in the Ad-Seg classification decision.  Finally, the request for declaratory and injunctive relief has been litigated extensively with no change in circumstances to warrant a different result.

With respect to the first cause of action as against Gore and Boorman, and the requests for declaratory and injunctive relief, the undersigned finds further leave to amend

1    would be futile. As such, the Court respectfully recommends that leave to amend be

2    **DENIED**.

3                  **V.**    **CONCLUSION**

4       For the reasons set forth above, the undersigned respectfully recommends the

5    Motion to Dismiss be **GRANTED, IN PART**, and the Motion to Dismiss and/or Motion

6    to Strike the demand for punitive damages be **DENIED**. The undersigned further

7    recommends that further leave to amend be **DENIED**, and that Defendants County of San

8    Diego, Sheriff Gore, Lieutenant Lovelace, and Sergeant Boorman be **DIRECTED** to file

9    an Answer to Plaintiff's Third Amended Complaint pursuant to Federal Rule of Civil

10   Procedure 12(a)(4)(A).

11      The Court submits this Report and Recommendation to United States District Judge

12   Janice L. Sammartino under 28 U.S.C. § 636(b)(1)(B) and Civil Local Rules 72.1(c) and

13   72.3(a) of the United States District Court for the Southern District of California.

14      Any party may file written objections with the Court and serve a copy on all parties

15   on or before **July 24, 2020**. The document should be captioned "Objections to Report and

16   Recommendation." Any reply to the Objections shall be served and filed on or before

17   **August 7, 2020**. The parties are advised that failure to file objections within the specified

18   time may waive the right to appeal with District Court's Order. *See Turner v. Duncan*, 158

19   F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

20    **IT IS SO ORDERED**.

21   DATE: July 10, 2020

22

23

24                                HON. RUTH BERMUDEZ MONTENEGRO

25                                UNITED STATES MAGISTRATE JUDGE

26

27

28